938

Mario Carabarín h/n/c Mona's Mexican Restaurant, Miguel
Hidalgo h/n/c El Padrinito, Ángel M. Villaronga Romero,
Carlos Shaubah, Herminio Cabán Rosado y Héctor Peña
h/n/c Cafetería Mi Nuevo Rincón, apelantes, v. Adminis-
tración de Reglamentos y Permisos y Comité de Asesora-
miento de Consultas y Revisión, apelada, Junta de Plani-
ficación, interventora y peticionaria, y Junta de
Apelaciones sobre Construcciones y Lotificaciones, orga-
nismo administrativo recurrido.

Números: CE-91-450    Resueltos: 9 de marzo de 1993
         CE-91-198
         CE-91-202
         CE-91-204
         CE-91-205
         CE-91-206
         CE-91-215

940

*Juan R. Requena Dávila* y *Juan B. Soto Balbás*, de *Mercado & Soto*, abogados del apelante Mario Carabarín h/n/c Mona's Mexican Restaurant; *Daniel Martínez Oquendo* y *José Luis Novas Dueño*, abogados del apelante Miguel Hidalgo h/n/c El Padrinito; *Orlando Martínez Sotomayor* y *Rafael Rivera Rosa*, abogados del apelante Ángel M. Villaronga Romero; *Carmen M. Quiñones Núñez* y *Margarita Carrillo*, abogadas del apelante Carlos Shaubah; *José Luis Novas Dueño*, abogado del apelante Héctor Peña h/n/c Cafetería Mi Nuevo Rincón; *Maritza Rodríguez Alonso*, abogada de la apelada Administración de Reglamentos y Permisos; *Efren B. Lugo Pérez*, abogado de la interventora peticionaria Junta de Planificación; *Ramón L. Alvarado Rivera*, abogado de la recurrida Junta de Apelaciones sobre Construcciones y Lotificaciones; *Luis Sánchez Caso*, abogado de los Vecinos de Ocean Park.

El Juez Asociado Señor Alonso Alonso emitió la opinión del Tribunal.

La única controversia que plantean los recursos ante nuestra consideración es la siguiente: ¿tiene jurisdicción la Junta de Apelaciones sobre Construcciones y Lotificaciones (en adelante J.A.C.L.) para revisar las determinaciones de la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) sobre *permisos de uso* en relación con propiedades sitas dentro de una *zona designada como histórica o de interés turístico*, al amparo de la Ley Núm. 374 de 14 de mayo de 1949, según enmendada, 23 L.P.R.A. sec. 161 y ss.; o si, por el contrario, la ley le asigna la jurisdicción directa y exclusivamente al Tribunal Superior para entender en tales casos? Resolvemos que en una zona histórica o turística, así designada, es el Tribunal Superior, Sala de San Juan, o de la localidad donde ubique la referida zona histórica o turística, el foro con la jurisdicción directa y exclusiva para revisar cualquier determinación de A.R.Pe. Veamos.

# I

Todos los recursos ante nuestra consideración tratan sobre determinaciones de A.R.Pe. respecto a diversos permisos de uso sobre propiedades ubicadas dentro de la zona turística del Condado y conforme a la reglamentación especial adoptada para esa área conocida como Reglamento de Zonificación Especial del Condado, Junta de Planificación, Boletín Administrativo Núm. 4690 de 22 de mayo de 1986. Ésta fue adoptada por la Junta de Planificación de Puerto Rico (en adelante J.P.P.R.) a tenor con las disposiciones de la Ley Núm. 374, *supra.*

Dicha ley autoriza a la J.P.P.R. a establecer zonas especiales antiguas o históricas, en coordinación con el Instituto de Cultura Puertorriqueña, y zonas de interés turístico, en coordinación con la Compañía de Turismo; requiere, además, que la concesión de permisos por parte de A.R.Pe. sobre acción alguna en estas zonas cuente con el endoso favorable de estas agencias, según sea el caso. Con la adopción del reglamento especial, la J.P.P.R., tomando en cuenta la importancia vital que para la vida económica y social del país tiene la zona del Condado —por ser nuestro principal centro turístico—[1] alteró la reglamentación existente en cuanto a usos, edificaciones, variaciones y otras. Esto con el fin de preservar y buscar el mejor aprovechamiento económico y social de los atributos turísticos

---

[1] El área turística del Condado es una zona de amplia extensión. Comprende todo el espacio contenido entre el Océano Atlántico, al norte, y la Avenida Baldorioty de Castro, al sur, y entre el Hotel Normandie en la isleta de San Juan, al oeste, y la Calle Taft y la Calle Carrion's Court, al este. Para el 1986, en el área convergía una población residente de sobre diez mil quinientas (10,500) personas, una población flotante de sobre seis mil (6,000) turistas durante la época navideña, una fuerza trabajadora de cinco mil seiscientas (5,600) personas y aproximadamente tres mil (3,000) visitantes diarios. El área tiene la mayor concentración de infraestructura y actividad turística en toda la isla, contando aproximadamente con el 46% de todas las habitaciones hoteleras. Se genera allí una marcada actividad económica que supera los seiscientos (600) millones de dólares anuales. *Junta de Planificación de P.R., supra.* Véase, además, *Condado: Inventario, Diagnóstico y Recomendaciones*, Junta de Planificación, junio de 1986.

de la zona y de garantizar el desarrollo ordenado y planificado del área, así como el mantenimiento de un adecuado balance entre sus componentes comerciales, residenciales y turísticos. Reglamento de Zonificación, *supra.*

Tales cambios en la reglamentación de la zona tuvieron el efecto de obligar a varios comerciantes del área a tener que conformar su situación legal a la nueva reglamentación adoptada para el área, al quedar las actividades comerciales de éstos fuera de los usos permitidos por la nueva reglamentación. Al quedar el uso existente como uno "no-conforme legal"[2] de acuerdo con el nuevo reglamento, los comerciantes del área venían obligados, dentro del término de un (1) año a partir de la fecha de su vigencia, a solicitar un permiso de uso no-conforme legal y, conjuntamente, a presentar una solicitud de "permiso permanente de uso conforme", según establece la Sec. 1.10.1 del Reglamento de Zonificación, *supra.*[3]

Un grupo de comerciantes del Condado no cumplieron con los trámites anteriormente señalados y A.R.Pe. optó por revocarles el permiso de uso permanente que ellos ha-

---

[2] El concepto de uso "no-conforme legal" ha sido avalado por este Tribunal en *Asoc. Res. Baldrich, Inc. v. J.P. de P.R.*, 118 D.P.R. 759, 770–771 (1987), y en *Fuertes, Guillermety v. A.R.Pe.*, 130 D.P.R. 971 (1992). Véase, además, Op. Sec. Just. Núm. 1987-12.

[3] La referida sección, en su parte pertinente, lee:

"1.10.1 Usos no-conformes legales

"La parte interesada en el uso de una pertenencia cuyo uso existente resulte ser una no-conformidad legal, solicitará por escrito la expedición de un permiso de no conformidad dentro del término de un (1) año después de la fecha de vigencia de este Reglamento. Será requisito para la obtención de dicho permiso de no conformidad la presentación de un permiso permanente de uso conforme, vigente a la fecha de este Reglamento.

"Dicho permiso de no-conformidad expresará claramente la naturaleza y extensión de la no-conformidad legal en relación con los cuales un uso no está en conformidad con este Reglamento. Se describirán también aquellos otros usos que sean permisibles bajo este Reglamento en la zona a la cual pertenezca la propiedad.

"Los usos que resulten una no-conformidad legal y para los cuales se obtenga un permiso de no-conformidad podrán ser operados por un término de dos años a partir de la fecha de vigencia de este Reglamento. Aquellos que no lo obtengan deberán cerrar operaciones en un término de un (1) año a partir de la fecha de vigencia de este Reglamento." Sec. 1.10.1 del Reglamento de Zonificación Especial del Condado, Junta de Planificación, Boletín Administrativo Núm. 4690 de 22 de mayo de 1986.

bían obtenido antes de que entrara en vigor el Reglamento de Zonificación, *supra.* Sobre este fundamento se le revocó el permiso de uso a una cafetería que vendía bebidas alcohólicas en el Condado (Caso en A.R.Pe. Núm. 80-18-D-357-588); a un salón de entretenimientos con máquinas electrónicas ubicado en la avenida Ashford (Casos en A.R.Pe. Núms. 87-17-D-966-SPP y 82-18-D-966-SPP), y a la cafetería Mi Nuevo Rincón localizada en la Calle Loíza (Caso en A.R.Pe. Núm. 84-18-C-123-SPP). Entre los recurrentes sólo hubo un comerciante ("El Padrinito", que opera una cafetería en la calle Loíza) el cual solicitó el permiso de uso "no-conforme legal" y A.R.Pe. lo concedió por un término vencedero el 7 de junio de 1988. Sin embargo, A.R.Pe. le notificó dicha concesión cuando ya había expirado dicho término: el 31 de agosto de 1988 (Caso en A.R.Pe. Núms. 82-18-B-392-SPC, 87-18-13-313-SPA y 87-18-D-267-SPA).

Además, A.R.Pe. revocó el permiso de uso permanente que se le había concedido a una heladería localizada en la avenida Ashford por estar utilizándose las facilidades para un "come y vete" y no para la heladería autorizada (Casos en A.R.Pe. Núms. SU-71-3-6761 y 88-18-G-301-SPQ), y le revocó el permiso de uso permanente a una lavandería localizada en la avenida Ashford por haberse violado dicho permiso al realizarse unas mejoras físicas contrarias a la ley (Caso en A.R.Pe. Núm. 86-18-I-026-SPP). Finalmente, A.R.Pe. emitió una resolución en la cual se negó a revocar el permiso de uso permanente de Mona's Mexican Restaurant localizado en la Calle Loíza, sin embargo, restringió el horario de operaciones de dicho negocio de manera que no se perturbara a los residentes de Ocean Park (Caso en A.R.Pe. Núm. 85-18-F-779-SPP).

En resumen, las actuaciones de A.R.Pe. en septiembre de 1988 pueden sintetizarse en cuatro (4) categorías: (1) revocación de permiso de uso permanente a negocios que no solicitaron permiso de uso no-conforme (cafetería en la Ashford, centro de entretenimiento de máquinas electróni-

cas, Cafetería Mi Nuevo Rincón); (2) revocación de permiso de uso permanente a negocios que violaron las restricciones de A.R.Pe. (heladería y lavandería localizadas en la Avenida Ashford); (3) restricción de horario de operaciones a un restaurante por perturbar a los vecinos (Mona's Mexican Restaurant), y (4) concesión de un permiso de uso no-conforme notificándose dicha decisión después de haber vencido el término para el cual se concedió el permiso (Cafetería "El Padrinito").

En todos y cada uno de estos casos, A.R.Pe. —en su resolución del caso— *apercibió a los solicitantes de su derecho a "radicar una apelación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones, dentro del término de treinta (30) días a partir de la fecha de notificación ...".* (Énfasis suplido.) Caso Núm. CE-91-450, Anejo I, pág. 35.

Así las cosas, las partes afectadas acudieron en alzada ante la J.A.C.L. cuestionando la corrección en derecho de las decisiones emitidas por A.R.Pe. A su vez, A.R.Pe. presentó ante la J.A.C.L. una Moción de Desestimación en la que alegó que dicha junta carecía de jurisdicción para entender en dichos casos ya que la Ley Núm. 374, *supra*, según enmendada por la Ley Núm. 8 de 10 de octubre de 1987, expresamente dispuso que las decisiones de A.R.Pe. sobre permisos de uso en zonas históricas y zonas turísticas se revisarían directamente por el Tribunal Superior. La J.P.P.R., por su parte, también presentó una moción en la cual alegó que la J.A.C.L. no podía pasar juicio sobre la validez de un reglamento de zonificación especial adoptado por la J.P.P.R. Evaluadas dichas mociones, la J.A.C.L. no acogió los planteamientos de A.R.Pe. ni los planteamientos de la J.P.P.R. En consecuencia, concluyó que tenía jurisdicción para entender en los recursos sometidos a su consideración. En reconsideración, la J.A.C.L. consolidó los casos señalados provenientes de A.R.Pe. y sostuvo su decisión al interpretar que los casos en que se puede ir directamente de A.R.Pe. al Tribunal Superior son aquellos en

que A.R.Pe. ha negado un *permiso de construcción o desarrollo de proyecto*, por lo tanto, dicho trámite no está disponible para los casos que nos ocupan ya que éstos tratan de *revocaciones de permisos de uso* o controversias en torno a estos tipos de permiso.

Inconformes con la resolución interlocutoria dictada por la J.A.C.L. el 14 de septiembre de 1990, que adjudicaba su jurisdicción para entender en los recursos presentados, A.R.Pe. y la J.P.P.R. acudieron separadamente en revisión ante el Tribunal Superior.

En el recurso instado por A.R.Pe., tras el cumplimiento de los trámites rutinarios, el tribunal de instancia (Hon. Arnaldo López, Juez) emitió una sentencia el 4 de marzo de 1991 en la que resolvió que la J.A.C.L. carecía de facultad en ley para entender en los recursos interpuestos.

De dicha decisión acudieron ante nos, mediante *certiorari*, la J.A.C.L. (CE-91-205), la Cafetería Mi Nuevo Rincón (CE-91-206), Mona's Mexican Restaurant (CE-91-202), la cafetería "El Padrinito" (CE-91-204), el señor Villaronga —arrendatario del local donde se opera el centro de diversiones de máquinas electrónicas— (CE-91-215) y el señor Shaubah —administrador de la propiedad donde está ubicado el centro de diversiones de máquinas electrónicas— (CE-91-198). En síntesis, todas las partes alegan que el foro de instancia erró al concluir que la J.A.C.L. carece de jurisdicción para considerar las actuaciones de A.R.Pe. negando o restringiendo permisos de uso en una zona turística.([4])

Por su parte, en el recurso de revisión instado por la J.P.P.R., el tribunal de instancia (Hon. Gilberto Gierbolini, Juez) finalmente resolvió mediante sentencia emitida el 5

---

([4]) En los recursos CE-91-202, CE-91-204 y CE-91-198, además, se alega que el foro de instancia no tenía jurisdicción para resolver la controversia planteada ya que A.R.Pe. no notificó su recurso de revisión administrativa a todas las *partes* implicadas en el caso que nos ocupa. Conforme a lo que aquí resolvemos es innecesario entender en tal señalamiento.

de junio de 1991 que una parte afectada por las determinaciones de A.R.Pᴇ. en zonas históricas o de interés turístico puede optar por seguir el trámite administrativo y acudir ante la J.A.C.L., o acudir directamente a los tribunales, por lo cual la J.A.C.L. sí tenía jurisdicción para entender en los casos, puesto que las partes afectadas escogieron continuar por la vía administrativa.

De esta sentencia acudió ante nos la J.P.P.R. mediante *certiorari* presentado el 16 de julio de 1991 (CE-91-450).

Mediante resoluciones de 3 de mayo de 1991 y de 30 de agosto de 1991, ordenamos la consolidación de los recursos presentados y expedimos los autos correspondientes. Las partes han comparecido, y estando en posición de resolver, procedemos a así hacerlo.

## II

Mediante la aprobación de la Ley Núm. 374, *supra*, la Asamblea Legislativa facultó a la J.P.P.R. a establecer zonas antiguas o históricas, y proveyó con la protección de las estructuras y preservación de los rasgos arquitectónicos de tales zonas. Proveyó, además, con la evaluación de los organismos de planificación entonces existentes sobre los desarrollos propuestos (Junta de Apelaciones sobre Construcciones y Negociado de Permisos sobre Construcciones) *y dispuso para la apelación directa a este Foro* dentro del período de quince (15) días a partir de la denegación de los permisos de construcción y de desarrollo de proyectos en estas zonas. Evidentemente, en sus inicios el legislador estuvo preocupado básicamente por la preservación de las edificaciones y atribuciones físicas o estructurales de las áreas históricas.

■ No obstante, mediante la Ley Núm. 8 de 8 de junio de 1972 se enmendó la referida Ley Núm. 374 para incluir, dentro del ámbito de la legislación, la designación de zonas

de interés turístico.([5]) Al así hacerlo el legislador introdujo el aspecto del *uso* de las propiedades ubicadas en zonas históricas o las nuevas zonas de interés turístico *como un factor relevante a la preservación del carácter histórico o turístico de la zona, particularmente en cuanto a las últimas.* Al respecto el Art. 1 de la referida Ley Núm. 8 (23 L.P.R.A. sec. 161) dispuso:

> Artículo 1.—Zonas Antiguas o Históricas y Zonas de Interés Turístico—Permisos de construcción
>
> Con el propósito de preservar los valores históricos de Puerto Rico y desarrollar el turismo mediante la conservación y protección de especiales lugares y estructuras, y mediante la planificación armoniosa de la construcción de nuevas estructuras, por la presente se dispone que toda solicitud de permiso de construcción, *permiso de uso*, o cualquier otra solicitud de permiso que se radique ante el Negocïado de Permisos creado por los Artículos 23, 25 y 26 de la Ley núm. 213 de mayo 12 de 1942, según enmendada, y los Artículos 1 al 12 de la Ley núm. 429 de abril 23 de 1946, según enmendada, para realizarse dentro de los límites de una zona antigua o histórica creada a virtud de los Artículos 1 al 5A de la Ley núm. 374 de mayo 14 de 1949, según enmendada, y en la forma más adelante dispuesta, o dentro de los límites de una zona de interés turístico creada por esta ley y en la forma más adelante dispuesta, ha de ser previamente realizada y autorizada en cuanto a sus detalles, rasgos arquitectónicos y apropiada relación con el carácter de tal zona.
>
> *En el caso de una zona de interés turístico* ninguna franquicia, permiso, autorización o licencia para obras, construcciones, instalaciones, servicios, *uso* o actividades dentro de dicha zona podrá ser concedido por la Junta de Planificación sin el previo informe favorable de la Compañía de Fomento de Turismo. (Énfasis suplido y escolios omitidos.) 1972 Leyes de Puerto Rico 371.

En su Art. 2 (Leyes de Puerto Rico, *supra*, pág. 372) dispuso en lo pertinente:

---

([5]) Además, se enmendó la ley para requerir que en la designación de una zona de interés turístico, la J.P.P.R. coordinara con la Compañía de Fomento del Turismo, y para requerir el endoso favorable de ésta para cualquier autorización sobre proyectos que concediese la J.P.P.R. en tales zonas.

Artículo 2.—Aprobación de planos; normas

La Junta de Planificación creada por los Artículos 1 al 33 de la Ley núm. 213 de mayo 12 de 1942, según enmendada, a los fines de los Artículos 1 al 5A de la Ley núm. 374 de mayo 14 de 1949, según enmendada, y en adición a sus otras obligaciones y deberes, dictaminará sobre la propiedad de todos y cada uno de los aditamentos (incluyendo rótulos), rasgos arquitectónicos, color, y demás características de cualquier edificación, estructura, pertenencia o parte de la misma que a partir de la vigencia de los Artículos 1 al 5A de la Ley núm. 374 de mayo 14 de 1949, según enmendada, desee eregirse, reconstruirse, ampliarse, alterarse, restaurarse, demolerse, o en cualquier modo desarrollarse dentro de cualquier zona antigua o histórica de Puerto Rico o *dentro de una zona de interés turístico. En este último caso dicho dictamen incluirá también el uso a que se destina la propiedad, debiendo contar la Junta con la recomendación de la Compañía de Fomento de Turismo sobre los extremos del dictamen aquí definidos.* (Énfasis suplido y escolio omitido.)

Con posterioridad, mediante la Ley Núm. 4 de 15 de julio de 1975 (23 L.P.R.A. secs. 161 n., 161–164 y 166) se enmendaron las leyes anteriores a los fines de adecuar las disposiciones de ley a la creación de los nuevos organismos y procedimientos de planificación, particularmente por haberse traspasado a A.R.PE. la fase operacional de la J.P.P.R. respecto a la evaluación y concesión de permisos. Véase *Asoc., C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 331 (1985). Por ello se enmendaron los Arts. 1 y 2 de la Ley Núm. 374, *supra*, 23 L.P.R.A. secs. 161 y 162, para que leyera "Administración de Reglamentos y Permisos" allí donde decía "Junta de Planificación" en relación a la otorgación de permisos.

Finalmente, mediante la Ley Núm. 8 de 10 de octubre de 1987 (23 L.P.R.A. secs. 165–166) se expandió el ámbito de autoridad legal conferido a la J.P.P.R. y a otras agencias (Instituto de Cultura Puertorriqueña y Compañía de Turismo) para concederles potestad en cuanto a la disposición de alteraciones y modificaciones tradicionalmente bajo el exclusivo control del municipio donde ubica la zona

histórica o turística, como lo son los cambios o modificaciones del tránsito tradicional o en la pavimentación o niveles de sus calles, aceras y avenidas, o modificaciones en la vegetación o en el mobiliario urbano.([6])

En la exposición de motivos de dicha ley se expresa la importancia y trascendencia de dichas zonas antiguas o históricas y se aclara que la revisión de las actuaciones de los organismos administrativos concernidos será en el Tribunal Superior, Sala de San Juan, o la Sala de ese tribunal correspondiente al lugar donde ubiquen dichas zonas.

En dicha exposición de motivos leemos de la forma siguiente:

> La Junta de Planificación de Puerto Rico está facultada por la Ley Núm. 374 de 14 de mayo de 1949, según enmendada, a establecer zonas antiguas o históricas, en coordinación con el Instituto de Cultura Puertorriqeña y a establecer zonas de interés turístico en coordinación con la Compañía de Turismo. Tanto las zonas antiguas o históricas como las zonas de interés turístico *son de gran importancia y trascendencia para todo el pueblo puertorriqueño; es decir, trascienden el municipio o sector donde las mismas ubican. El Artículo VI, Sección 19, de nuestra Constitución reconoce la importancia de las zonas antiguas o históricas al establecer en su parte pertinente que será política pública del Estado Libre Asociado la conservación y mantenimiento de los lugares que sean declarados de valor histórico o artístico por la Asamblea Legislativa. Las zonas de interés turístico, que podrían coincidir con zonas antiguas o históricas, promueven el turismo, que es una actividad que constituye un renglón fundamental de nuestra economía.* La preservación y mantenimiento con su valor histórico y turístico de las zonas antiguas o históricas y de interés turístico así declaradas, es necesario e indispensable para la preservación de

---

([6]) Las enmiendas introducidas por esta ley respondieron a las situaciones surgidas por la implantación en ese momento del proyecto de San Juan Peatonal por parte del entonces Alcalde de San Juan. Así la Asamblea Legislativa limitó la capacidad de los municipios de autorizar o realizar cambios en estas zonas sin contar con el endoso y la autorización previa de las agencias concernidas. Véanse el historial legislativo de la Ley Núm. 8 de 10 de octubre de 1987 (23 L.P.R.A. secs. 165–166) y su exposición de motivos. *López, Fed. Coms. Unidos v. Mun. de San Juan*, 121 D.P.R. 75 (1988).

nuestros valores culturales y para mantener lugares atractivos al turista para motivar su continua afluencia a los mismos.

Las zonas mencionadas no sólo pueden ser afectadas por la instalación o erección de estructuras *y otras acciones relacionadas con el aspecto físico de las mismas*, sino también por cambios o modificaciones del tránsito tradicional o en la pavimentación o nivel de sus calles, aceras y avenidas o por las modificaciones en la vegetación o en el mobiliario urbano que no se desarrollen de acuerdo a un plan basado en motivos o facilidades culturales, históricas, arquitectónicas, artísticas o turísticas. Estos cambios pueden trastocar la vida económica y social de tales zonas y convertirlas en una carga económica para los negocios *y otros usos* que se hayan establecido precisamente atendiendo a su valor histórico o turístico.

La experiencia ha demostrado que a pesar de la legislación y reglamentación vigente para dichas zonas se han tomado acciones que claramente desvirtúan los propósitos y fines de la creación de las zonas antiguas o históricas y de interés turístico. Ello hace necesario enmendar la Ley Núm. 374, anteriormente citada, para establecer los mecanismos necesarios para que los organismos gubernamentales encargados de administrar esta ley puedan evaluar los proyectos que se desarrollen en estos lugares y requerir las modificaciones o cambios que sean indispensables para asegurar la preservación de estas zonas. *Se establece, además, claramente que el foro con jurisdicción para revisar actuaciones de los organismos administrativos pertinentes, al amparo de dicha ley lo constituye el Tribunal Superior, Sala de San Juan o la Sala de ese Tribunal correspondiente al lugar donde ubiquen dichas zonas.* (Énfasis suplido.) 1987 Leyes de Puerto Rico 1027–1028.

En consecuencia, se enmendó el Art. 5 (23 L.P.R.A. sec. 165) del estatuto con el fin de *aclarar* que el foro con jurisdicción para revisar las actuaciones de los organismos administrativos pertinentes al amparo del estatuto *lo es el Tribunal Superior.* Dicha enmienda respondió a que la Ley Núm. 115 de 26 de junio de 1958 (4 L.P.R.A. sec. 35 y ants. secs. 37 y 37 n.), la cual enmendó la Ley de la Judicatura de 1952, había transferido la jurisdicción directa, originalmente concedida a esta Curia, al Tribunal Superior de Puerto Rico, cambio que no había sido incorporado a la letra del estatuto en cuestión. Además, incorporó un nuevo

Art. 6 (23 L.P.R.A. sec. 165a) (renumerado como Art. 8 por la misma ley) en el cual, en su último párrafo, se lee:

Cualquier parte afectada por la determinación de la Junta de Planificación o de la Administración de Reglamentos y Permisos podrá recurrir *en revisión al Tribunal Superior*, a tenor con lo dispuesto en sec. 165 de este título. (Énfasis suplido.)

Por su parte, el Art. 5 de la Ley Núm. 374, *supra*, lee:

Sec. 165.—Revisión por el Tribunal Superior

En caso de así rechazarse un permiso de construcción o desarrollo de proyecto, la parte solicitante podrá recurrir en revisión directamente al Tribunal Superior, Sala de San Juan, o la Sala de ese tribunal correspondiente al lugar donde ubican dichas zonas, dentro del término de quince (15) días a partir de la fecha de notificación de tal resolución o acuerdo de la Administración de Reglamentos y Permisos; Disponiéndose, que dicha revisión se podrá conceder y se limitará exclusivamente a cuestiones de derecho. 23 L.P.R.A. sec. 165.

Finalmente, el 12 de agosto de 1988 se aprobó la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 (3 L.P.R.A. sec. 2101 *et seq.*), la cual, entre otras, estableció un procedimiento uniforme de revisión judicial en cuanto a todas "aquellas órdenes, resoluciones y providencias dictadas por agencias o funcionarios administrativos *que deban o puedan ser revisadas por el Tribunal Superior de Puerto Rico ...*". (Énfasis suplido.) 3 L.P.R.A. sec. 2171. Sus disposiciones al efecto desplazaron aquellos procedimientos existentes que resultaban incompatibles con las disposiciones de la nueva Ley Núm. 170, *supra*; *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992); *Hernández v. Golden Tower Dev. Corp.*, 125 D.P.R. 744 (1990). Conforme a sus disposiciones, se estableció el término uniforme de treinta (30) días a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia para acudir en revisión ante el Tribunal Superior, 3 L.P.R.A. sec. 2172. Además, se establece como requisito jurisdiccional para po-

der acudir en revisión al tribunal, el haber solicitado oportunamente a la agencia la reconsideración de la orden o resolución de la cual se recurre, 3 L.P.R.A. sec. 2165. Véase *Pagán Ramos v. F.S.E.*, supra.

A tales efectos, las disposiciones de la Ley Núm. 8, *supra*, que proveen para la revisión en el Tribunal Superior de las determinaciones de A.R.PE. en zonas históricas y de interés turístico, deben entenderse enmendadas por las disposiciones de la Ley Núm. 170, *supra.*

Tales son las disposiciones vigentes en cuanto al ámbito de revisión sobre las actuaciones que al amparo de la Ley Núm. 374, *supra*, pueden tomar los organismos encargados de velar por el cumplimiento de la política pública establecida por el estatuto.

### III

Examinado el desarrollo legislativo del estatuto, no nos persuaden los peticionarios con su alegación de que éste, según enmendado, evidencia la preocupación del legislador únicamente con la preservación de los aspectos puramente físicos, arquitectónicos o estructurales de las edificaciones existentes en las zonas históricas o de interés turístico, y no con los *usos* a que se destinen las mismas. Por ello sostienen que sus Arts. 5 y 8, según enmendados por la Ley Núm. 8, *supra*, deben interpretarse como que proveen para la revisión directa y exclusiva por el Tribunal Superior únicamente de aquellas decisiones concernientes al *rechazo de permisos de construcción o desarrollo de proyectos*, y no de aquellas relativas a la denegación de permisos de uso. Arguyen que el legislador proveyó para el desvío del trámite apelativo normal sólo en cuanto a los primeros. Veamos.

Tal como expresamos en *Luan Investment Corp. v. Román*, 125 D.P.R. 533 (1990):

La zonificación es uno de los instrumentos conferidos por el

legislador a la Junta [de Planificación]·para llevar a cabo sus funciones dentro de una sociedad y un gobierno cada vez más complejos, un sistema abierto que confronta innumerables presiones como resultado de necesidades y aspiraciones conflictivas y que experimenta unos cambios sociales acelerados dentro de su escala reducida, escasez de terreno y recursos naturales, alta densidad poblacional y un ecosistema frágil. Dicho instrumento fortalece aquellas funciones de la Junta relacionadas con la orientación, coordinación e integración de la política pública sobre el desarrollo integral del país, así como de sus funciones de investigación, información y asesoramiento.

. . . . . . . . .

Mediante la reglamentación de zonificación el Estado asume un rol activo en el proceso de control y regulación de la utilización del limitado recurso tierra y de nuestro frágil ecosistema a fin de armonizar intereses y aspiraciones con las menores perturbaciones sociales.

■ La planificación *es una disciplina integradora* que busca sopesar la más diversa conjugación de factores con el fin de garantizar un desarrollo racional y balanceado del área en cuestión, y que a su vez resulte cónsona con los desarrollos propuestos o vislumbrados para la región, áreas circundantes y el desarrollo del país. 23 L.P.R.A. sec. 62c.[7]

Dentro de esta concepción *no cabe el compartimiento de los elementos que forman el ambiente general de una zona histórica o turística,* para su evaluación y adjudicación independiente y por organismos separados. Tal como señalá-

---

[7] La Ley Orgánica de la Junta de Planificación de Puerto Rico, Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 62 *et seq.*), al describir los *propósitos generales* de ese cuerpo señala:

"Los poderes concedidos en este Capítulo se ejercerán con el propósito general de guiar el *desarrollo integral* de Puerto Rico de modo coordinado, adecuado, económico, el cual, de acuerdo con las actuales y futuras necesidades sociales y los recursos humanos, ambientales, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y futuros habitantes, y aquella eficiencia, economía y bienestar social en el proceso de desarrollo, en la distribución de población, en el *uso* de las tierras y otros recursos naturales, y en las mejoras públicas que tiendan a crear condiciones favorables para que la sociedad pueda *desarrollarse integralmente.*" (Énfasis suplido.) 23 L.P.R.A. sec. 62c.

ramos en *López, Fed. Coms. Unidos v. Mun. de San Juan,* 121 D.P.R. 75, 91–92 (1988):

> De toda esta legislación y reglamentación surge que la política pública constitucional —según visualizada por la Asamblea Legislativa e implantada por la Junta de Planificación, aun antes de aprobarse la Ley Núm. 8, *supra,* [de 10 de octubre de 1987]— con excepción del tránsito, cubre no sólo los edificios y sus pertenencias, sino plazas, parques y aquellas otras áreas correspondientes *de mantener el ambiente y características de una zona histórica.*
>
> *Difícilmente es armonizable la preservación de una zona histórica si su ambiente y características incidentales físicas no compaginan. Debe prevalecer el espíritu de los siglos. Una zona histórica es la suma total de todas las partes que componen el medio ambiente.* (Énfasis suplido y en el original.)

*Los usos* forman parte de *aquellas características primarias* que ayudan a conformar el ambiente característico de una zona histórica o una de interés turístico, particularmente éstas últimas, y cuya alteración podría afectar el carácter mismo de aquellas. Esto mismo es un aspecto que se encuentra detalladamente regulado en el Reglamento de Zonificación Especial del Condado adoptado a tenor con las disposiciones del estatuto que hoy nos ocupa. Evidentemente, el elemento de la reglamentación de los usos constituye un aspecto fundamental en la configuración y preservación de estas zonas, y sobre el cual tanto la J.P.P.R. como A.R.Pe., al amparo del estatuto en cuestión, necesariamente habrán de tomar decisiones que afectarán a quienes ostentan derechos sobre las propiedades en el área. En consecuencia, el Tribunal Superior tiene jurisdicción para revisar directamente las determinaciones de A.R.Pe. y de la J.P.P.R. en cuanto a la concesión de permisos de uso en zonas de interés histórico o turístico, así designadas al amparo de la Ley Núm. 374, *supra,* previa solicitud de reconsideración ante la agencia en cuestión.

## IV

Alegan varios peticionarios, en la alternativa, que conforme a lo resuelto por uno de los ilustrados jueces de instancia, una parte afectada por una determinación de A.R.Pe., en una zona histórica o una de interés turístico, tiene la opción de acudir directamente al Tribunal Superior o de continuar el trámite administrativo acudiendo a la J.A.C.L. No les asiste razón.

■ La jurisdicción de la J.A.C.L. para revisar las determinaciones de A.R.Pe. *no es una general sino específica que se encuentra expresamente delimitada por ley. Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

Sobre el particular, el Art. 31 de la Ley Núm. 76 de 24 de junio de 1975 (23 L.P.R.A. sec. 72c) *taxativamente* dispone que:

Sec. 72c. Facultades y deberes de la Junta

(a) La Junta de Apelaciones tendrá facultad para entender *exclusivamente* en aquellos casos en que una parte directamente interesada o afectada por actuaciones, determinaciones o resoluciones de la Administración de Reglamentos y Permisos en relación con: permisos de construcción y de uso de edificios, permiso de uso de solares, para áreas de estacionamiento; casos y planos de lotificación simple; planos de lotificación; casos donde se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa. *Esta facultad se limita* a aquellas decisiones emitidas al amparo de los Reglamentos de Zonificación, para Lotificaciones Simples, Lotificación y Edificación de Facilidades Vecinales, Reglamentos sobre Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones y de reglamentos de emergencia que cubran asuntos incluidos en el ámbito de revisión de la Junta de Apelaciones pero no incluye lo siguiente: decisiones que tengan el efecto de alterar en forma alguna un Plan de Usos de Terrenos hasta donde éste haya sido adoptado por la Junta de Planificación; decisiones sobre la ubicación de proyectos, uso de terrenos, densidad, a nivel de consulta de ubicación, zonificaciones y rezonificaciones .... (Énfasis suplido.) 23 L.P.R.A. sec. 72c.

Dicha jurisdicción no se extiende a la revisión de las determinaciones de A.R.Pe. sobre los casos de urbanizaciones, 23 L.P.R.A. sec. 72d, o en casos de lotificaciones que no sean simples. *Vázquez v. A.R.P.E.*, supra; *Junta de Planificación v. J.A.C.L.*, 109 D.P.R. 210 (1979). Tampoco tiene facultad para "alterar en forma alguna un Plan de Usos de Terrenos hasta donde éste haya sido adoptado por la [J.P.P.R.]; decisiones sobre la ubicación de proyectos, uso de terrenos, densidad, a nivel de consulta de ubicación, zonificaciones y rezonificaciones". 23 L.P.R.A. sec. 72c. Véase *Vázquez v. A.R.P.E.*, supra. En estos casos la trascendencia e impacto social del desarrollo propuesto es de mayor envergadura.

*Así tampoco se extiende su jurisdicción a la revisión de las determinaciones de A.R.Pe. sobre casos en zonas antiguas o históricas ni de interés turístico.*

En estos últimos casos de zonas designadas como antiguas o históricas y de interés turístico, los proyectos allí realizados y los usos permitidos también tienen un impacto generalizado sobre el sector y nuestra sociedad en general. En estos casos el interés del legislador ha sido el de proveer un mecanismo adjudicativo rápido para la solución final de las controversias surgidas al amparo de los reglamentos de zonificación especial para estas zonas, canalizando el trámite procesal por la vía de la revisión judicial directa *y exclusiva.* Tal mecanismo no se visualizó con la intención de abrirle otra opción procesal a las partes afectadas, sino con el propósito de acelerar el fin de las controversias surgidas con miras a proteger el eminente interés social implicado.

El Tribunal Superior tenía la jurisdicción directa *y exclusiva* para entender en la revisión de las determinaciones de A.R.Pe. que denegaban los permisos en cuestión. Los apelantes tenían el término de treinta (30) días para acudir en revisión al tribunal, previa solicitud de reconsi-

deración a la agencia dentro de los términos y las condiciones provistos por ley.

■ A estos efectos, en aquellos casos como el que nos ocupa —en el cual la ley no provee para una apelación ante la J.A.C.L.— *es responsabilidad de A.R.PE. el establecer unos procedimientos adecuados a tono con las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico que permitan al Tribunal Superior contar con el récord administrativo correspondiente y que provea para la reconsideración de los casos conforme a las disposiciones de dicha ley.*

## V

Ahora bien, en todas y cada una de las denegaciones, A.R.PE. informó a los peticionarios que tenían derecho de acudir ante la J.A.C.L. para impugnar las determinaciones de ese organismo. Los peticionarios activaron tal remedio con la debida diligencia presentando sus apelaciones dentro del término de treinta (30) días dispuesto por ley para aquellos casos en que la J.A.C.L. tiene jurisdicción apelativa. 23 L.P.R.A. sec. 72c.

■ Ante tales hechos, si bien la actuación de A.R.PE. no pudo tener el efecto de concederle jurisdicción a un organismo que por ley no la tiene, sí tiene el efecto de detener los términos para solicitar la reconsideración ante la agencia y revisión ante el Tribunal Superior. Tal como hemos expresado, son aplicables al caso de autos las disposiciones de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.* Ésta, en su Sec. 3.14, expresamente dispone que "[l]a orden o resolución advertirá el derecho de solicitar la reconsideración o revisión de la misma, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos". 3 L.P.R.A.

sec. 2164. Es decir, los términos para solicitar la reconsideración o revisión de las determinaciones adjudicativas hechas por la agencia administrativa *comienzan a correr* desde el momento en que se notifica a la parte del archivo en autos de la copia de la orden o resolución de la agencia, y se le apercibe de su derecho a solicitar la reconsideración o revisión de ella, según sea el caso, con expresión de los términos correspondientes. *Cf. Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992). Dicha notificación y apercibimiento presupone *el que se informe correctamente* sobre los términos y condiciones para el ejercicio de tales derechos.

Resolver en contrario sería permitirle a A.R.Pe. el beneficiarse de sus actuaciones induciendo a error a los peticionarios, *quienes confrontados con una disposición de ley —de la cual no surgía de forma diáfana cuál es el foro con jurisdicción para entender en la revisión de las determinaciones de la agencia*—[8] optaron por acudir al foro que se les notificó que debían acudir. El principio de derecho que ordena proceder de buena fe en la vida jurídica impide que A.R.Pe. se beneficie al actuar en contra de sus propios actos. "La conducta contradictoria no tiene lugar en el campo del Derecho, y debe ser impedida." *Int. General Electric v. Concrete Builders*, 104 D.P.R. 871, 877 (1976). *Cervecería Corona v. Commonwealth Ins. Co.*, 115 D.P.R. 345 (1984).

Por ello, los peticionarios tendrán, a partir de la devolución de nuestro mandato al tribunal de instancia en este caso, los términos que en derecho procedan para solicitar la reconsideración ante A.R.Pe. y posterior revisión judicial, de ser necesario, de las determinaciones de dicha agencia.

---

[8] Nótese, además, que dos (2) jueces del Tribunal Superior también tuvieron criterios distintos sobre la interpretación de la controversia ante nos.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Rebollo López concurrió con una opinión escrita. El Juez Asociado Señor Hernández Denton no intervino.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Le corresponde una vez más a este Tribunal, como el más alto foro judicial del País, dirimir los conflictos relativos a los linderos y facultades, de índole jurisdiccional, que las agencias administrativas a cargo de la adecuada y ordenada planificación en nuestro País reclaman para sí con motivo de los constantes, y en ocasiones conflictivos, cambios en el ordenamiento jurídico; consecuencia los mismos del cada vez más acelerado desarrollo que experimentamos como Pueblo. *En específico*, debemos resolver cuál es el foro ante el cual debe acudirse en revisión de una decisión emitida por la Administración de Reglamentos y Permisos (en adelante A.R.Pe.), denegando o concediendo una solicitud de permiso de uso referente a propiedades ubicadas dentro de una zona designada, por nuestro ordenamiento, como "histórica o de interés turístico".

Por las razones que a continuación *específicamente* exponemos, *concurrimos* con la decisión emitida por una mayoría de los integrantes del Tribunal a los efectos de que es el Tribunal Superior de Puerto Rico el foro con jurisdicción para revisar la decisión emitida por A.R.Pe. en esta clase de situaciones.

I

En virtud de la Ley Núm. 213 de 12 de mayo de 1942 (23 L.P.R.A. ants. secs. 1–30) fue creada la Junta de Plani-

ficación, Urbanización y Zonificación de Puerto Rico, antecesora directa de nuestra actual Junta de Planificación. Conforme el propósito general recogido en el Art. 3 de esta Ley Núm. 213, ante, 23 L.P.R.A. ant. sec. 3, la Junta de Planificación, Urbanización y Zonificación de Puerto Rico habría de "guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico", a los fines de maximizar la eficiencia en la administración de nuestros espacios y los movimientos poblacionales. El Art. 10 de la Ley Núm. 213, ante, 23 L.P.R.A. ant. sec. 10, confería a esta Junta la facultad de aprobar reglamentos que regirían el proceso de lotificación en el País, siendo ésta una de las facultades que posteriormente le serían conferidas a A.R.Pe.. al momento de su creación. Significativamente, el Art. 25 de la Ley Núm. 213, ante, 23 L.P.R.A. ant. sec. 27, creó, en adición, la Junta de *Apelaciones* de Planificación, Urbanización y Zonificación,(¹) constituyendo éste un organismo ante el cual podría recurrir "[c]ualquier parte directamente interesada en la expedición o denegación de un permiso de construcción, sanitario o de uso de terrenos o edificios", que previamente hubiera sido denegado por la Junta de *Planificación*, Urbanización y Zonificación de Puerto Rico.(²)

Antes de que finalizara la década de 1940, la Asamblea Legislativa habría de aprobar la Ley Núm. 374 de 14 de mayo de 1949 ( 23 L.P.R.A. sec. 161 *et seq.*) dirigida a crear la categoría de zona antigua o histórica y a facultar a la Junta de Planificación de Puerto Rico para, con la aprobación previa de la Junta de Apelaciones sobre Construcciones, designar determinadas zonas dentro de esta categoría. Esta ley, según originalmente concebida, le confería a la

---

(¹) La cual podemos considerar como "antecesora" de la actual Junta de Apelaciones sobre Construcciones y Lotificaciones.

(²) Art. 26(a) de la citada Ley Núm. 213 de 12 de mayo de 1942 (23 L.P.R.A. ant. sec. 28(a)).

entonces existente Junta de Apelaciones sobre Construcciones el poder de aprobar o desaprobar toda solicitud relacionada con permisos de construcción a realizarse dentro de una zona antigua o histórica, pudiendo la parte proponente, en caso de rechazo, "recurrir en revisión directamente a la Tribunal Supremo de Puerto Rico, dentro del término de quince (15) días a partir de la fecha de notificación de tal resolución o acuerdo". Véase Art. 5 de la Ley Núm. 374, ante, 23 L.P.R.A. sec. 165.

Este esquema general, sin embargo, no permaneció en vigor por mucho tiempo. En el año de 1950 el Gobernador de Puerto Rico preparó e implantó el Plan de Reorganización Núm. 11, cuya consecuencia principal consistió *en suprimir* la entonces existente Junta de Apelaciones sobre Construcciones, transfiriendo todos sus poderes, así como el Negociado de Permisos, a la Junta de Planificación.([3]) Conforme al aludido Plan de Reorganización Núm. 11 de 1950, el Art. 5 de la Ley Núm. 374, ante, fue enmendado a los efectos de que la parte proponente pudiera acudir en revisión directa ante el Tribunal Supremo de las decisiones de la Junta de Planificación. 23 L.P.R.A. sec. 165 (ed. 1964). No es sino hasta el año de 1959 que la Junta de Apelaciones sobre Construcciones y Lotificaciones (en adelante J.A.C.L.) —más o menos tal como la conocemos hoy en día— nace nuevamente a la vida jurídica mediante la Ley Núm. 95 de 30 de junio de 1959, enmendatoria del Art. 25 de la Ley de Planificación y Presupuesto de 1942, Ley Núm. 213, ante, y del Art. 26 de la misma ley, 23 L.P.R.A. ant. sec. 28. Con ello se inicia, contrario a la tendencia anterior, un *proceso de descentralización* de los poderes virtualmente omnímodos que mantuvo la Junta de Planificación por el término de casi una década. Se le encomendó así a la J.A.C.L. la tarea de entender en recursos apelativos instados en reacción a denegatorias de permisos de uso,

---

([3]) Véase 1949–1950 Leyes de Puerto Rico LXXXI.

poder éste que la Junta de Planificación aún retenía bajo su jefatura.

No obstante la importancia que para nuestro sistema de planificación conllevaron las enmiendas contenidas en la Ley Núm. 95, ante, *resulta aún más significativo para la adjudicación de este recurso los aspectos del ordenamiento de planificación que no cambiaron.* Efectivamente, la "resurrección" de la J.A.C.L. en virtud de la Ley Núm. 95, ante, tuvo un *efecto limitado* en tanto fue dirigida a modificar la Ley Núm. 213, ante (Planificación y Presupuesto), configurada, como ya señaláramos, para regir los procesos de planificación en general. Por el contrario, la Ley Núm. 374, ante (Zonas Históricas y Antiguas), permaneció inalterada, facultando a la Junta de Planificación —al igual que bajo la Ley Núm. 213, ante— a entender en proyectos y permisos de contrucción. *Sin embargo —y contrario en este aspecto a la Ley Núm. 213, según enmendada, ante— la Ley Núm. 374, ante, mantuvo el procedimiento de revisión directa ante el Tribunal Supremo de toda denegatoria de permiso relacionada a zonas catalogadas como antiguas o históricas por la propia Junta de Planificación.*

El *proceso de descentralización* del sistema de planificación en nuestro País tuvo su *punto culminante* en el año 1975. Así, en virtud de la Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 62 *et seq.*) se promulgó la actual Ley Orgánica de la Junta de Planificación de Puerto Rico, asignándole a esta nueva agencia, según la exposición de motivos, la tarea de someter, coordinar e integrar toda la política pública sobre el desarrollo integral del País. Por ende, la Junta de Planificación *quedó liberada* de las funciones operacionales que en virtud de la Ley Orgánica de la Administración de Reglamentos y Permisos fueron transferidas a esta nueva agencia, comúnmente conocida por A.R.Pe. *Asoc., C.D. Octubre v. J.A.C.L.*, 116 D.P.R. 326, 331 (1985); *Junta de Planificación v. J.A.C.L.*, 109 D.P.R. 210, 214–215 (1979). En adición a A.R.Pe., la Ley Orgánica de

la Administración de Reglamentos y Permisos creó la actual Junta de Apelaciones sobre Construcciones y Lotificaciones. Art. 30 de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 72b.

Conocida aun cuando someramente la, en ocasiones, accidentada trayectoria de estos organismos administrativos, nos corresponde, como ya quedara intimado, *dirimir los linderos de sus respectivas funciones a tenor con la voluntad legislativa traducida en ley.*

## II

Una vez la voluntad legislativa es reducida a escrito, entra en función, de ser ello necesario, el Poder Judicial para dirimir conflictos ya sea en la interpretación de los estatutos como en el lenguaje de los mismos. Partimos, en consecuencia, del postulado de que "[s]on reglas básicas de hermenéutica legal que las leyes deben interpretarse considerando su 'razón y espíritu'...". *P.N.P. y P.I.P. v. Rodríguez Estrada*, 122 D.P.R. 490, 500 (1988). Dicho de otra forma, tenemos que "[e]l fin primordial de la interpretación estatutaria es hacer que prevalezca el propósito legislativo y evitar las interpretaciones que puedan conducir a resultados irrazonables". *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 208 (1988), y casos allí citados. Finalizada la tarea interpretativa, la función judicial ha de contraerse a "[hacer] cumplir la verdadera intención y deseo del poder legislativo". (Énfasis suprimido.) R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. J.T.S., 1987, pág. 242.

Ahora bien, por tratarse de varias leyes o estatutos que coinciden sobre un mismo objetivo, debe dársele especial consideración a la directriz contenida en el Art. 18 de nuestro Código Civil, 31 L.P.R.A. sec. 18:

*... Leyes referentes al mismo asunto*

Las leyes que se refieren a la misma materia o cuyo objeto sea el mismo, deben ser interpretadas refiriendo las unas a las otras, por cuanto lo que es claro en uno de sus preceptos pueda ser tomado para explicar lo que resulte dudoso en otro.

El principio de interpretación de estatutos *in pari materia* enunciado por esta disposición requiere que las leyes relativas a una misma materia, o similar objetivo, se interpreten en conjunto a fin de aclarar el lenguaje que en algunas de ellas puede resultar dudoso. *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990); *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589 (1989). "Somos del criterio que ante dicha situación tenemos la 'obligación de armonizar hasta donde sea posible todas las disposiciones de ley envueltas con miras a lograr un resultado sensato, lógico y razonable que represente la intención del legislador ...'." *Fernández v. Srio. de Hacienda*, 122 D.P.R. 636, 647 (1988).

Uno de los objetivos primarios de la legislación aprobada en el año de 1975 fue colocar sobre los "hombros" de A.R.Pe. las *labores operacionales* que anteriormente le pertenecían a la Junta de Planificación. No se desprende del historial legislativo de la Ley Orgánica de la Junta de Planificación ni de la Ley Orgánica de A.R.Pe. intención legislativa alguna de conferir a esta última agencia ningún poder o facultad que antes no poseyera la Junta de Planificación. *The Richards Group v. Junta de Planificación*, 108 D.P.R. 23, 31 (1978).

Debemos, pues, considerar a A.R.Pe. como una entidad "heredera" de todas las funciones operacionales y atributos de que antes gozaba la Junta de Planificación. *Asoc., C.D. Octubre v. J.A.C.L.*, ante; *Junta de Planificación v. J.A.C.L.*, ante. *Una de las facultades "heredadas" por A.R.Pe. lo fue el de entender en toda solicitud de permiso, relacionada con inmuebles localizados en zonas históricas y antiguas o de interés turístico, aún sujeta a las disposi-*

*ciones de la Ley Núm. 374, ante,* según ésta ha sido enmendada.

De entre todas las legislaciones cuyo historial jurídico hemos reseñado, *la Ley Núm. 374, ante, sobre zonas antiguas o históricas es sin duda alguna la de más larga duración y consistencia a través de los años.* Al amparo de la Ley Núm. 213, ante, la antigua Junta de Apelaciones sobre Construcciones tuvo injerencia sobre la otorgación de permisos en zonas de tal índole. Sin embargo, una vez suprimida por el Plan de Reorganización Núm. 11, las Leyes Núm. 95, ante, y Núm. 76, ante, de 1975 —si bien le concedieron nueva vida a la J.A.C.L.— *limitaron el alcance de su radio de acción.* Hasta el año de 1975 la Junta de Planificación retuvo para sí todo lo relacionado con la concesión de permisos en zonas históricas o antiguas, permaneciendo disponible en virtud del Art. 5 de la Ley Núm. 374, ante, el mecanismo de revisión directa al Tribunal Supremo.

Con motivo de la creación de A.R.Pᴇ. en el año de 1975, la Ley Núm. 374, ante, fue objeto de varias enmiendas *a los únicos fines* de armonizar su contenido en el sentido de formalizar la designación de dicha agencia como la entidad a cargo de tramitar las solicitudes de permisos en zonas antiguas o históricas y zonas de interés turístico. Art. 1 *et seq.*, 23 L.P.R.A. sec. 161 *et seq.* A su vez, el Art. 5 de la Ley Núm. 374 (23 L.P.R.A. sec. 165) fue enmendado por la Ley Núm. 8 de 10 de octubre de 1987, *para disponer la revisión ante el Tribunal Superior de toda denegatoria de permiso dispuesta por A.R.Pᴇ.*(⁴)

---

(⁴) El objetivo de esta enmienda fue armonizar el lenguaje del Art. 5 de la Ley Núm. 374 (23 L.P.R.A. sec. 165) con lo dispuesto en la Sec. 7 de la Ley de la Judicatura, 4 L.P.R.A. ant. sec. 35(b), la cual ordena:

"(b) Salvo lo dispuesto en el inciso (a) de esta sección, las decisiones, resoluciones y providencias dictadas por organismos y funcionarios administrativos y por subdivisiones políticas del Estado Libre Asociado que deben ser revisadas por el Tribunal Supremo al amparo de las leyes vigentes, deberán ser revisadas, al entrar en vigor este inciso, por el Tribunal Superior, Sala de San Juan, de acuerdo con los

El Art. 32 de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. sec. 72d, provee para que la parte inconforme con una decisión de la J.A.C.L. *pueda acudir igualmente en revisión ante el Tribunal Superior.* A su vez, el Art. 31 de esta ley, 23 L.P.R.A. sec. 72c(a), expone las facultades y deberes de la J.A.C.L., el cual, en lo aquí pertinente, reza:

*Facultades y deberes de la Junta*

(a) *La Junta de Apelaciones tendrá facultad para entender exclusivamente en aquellos casos en que una parte directamente interesada o afectada por actuaciones, determinaciones o resoluciones de la Administración de Reglamentos y Permisos en relación con: permisos de construcción y de uso de edificios, permiso de uso de solares ... para áreas de estacionamiento; casos y planos de lotificación simple; planos de lotificación; casos donde se solicite la dispensa del cumplimiento de requisitos de un Reglamento de Planificación mediante una concesión o autorización directa.* Esta facultad se limita a aquellas decisiones emitidas al amparo de los Reglamentos de Zonificación, para Lotificaciones Simples, Lotificación y Edificación de Facilidades Vecinales, Reglamentos sobre Control de Edificaciones y Desarrollo de Terrenos en Zonas Susceptibles a Inundaciones y de reglamentos de emergencia que cubran asuntos incluidos en el ámbito de revisión de la Junta de Apelaciones pero no incluye lo siguiente: decisiones que tengan el efecto de alterar en forma alguna un Plan de Usos de Terrenos hasta donde éste haya sido adoptado por la Junta de Planificación; decisiones sobre la ubicación de proyectos, uso de terrenos, densidad, a nivel de consulta de ubicación, zonificación y rezonificaciones; [d]isponiéndose, que en el ejercicio de su facultad apelativa, la Junta de Apelaciones velará por que la misma no se utilice con el propósito o resultado de obviar las disposiciones reglamentarias vigentes. (Énfasis suplido.)

*Nótese que nada de lo dispuesto en este estatuto le confiere específicamente a la J.A.C.L. jurisdicción para entender en decisiones de A.R.Pe. relativas a las zonas históricas y turísticas.* El precitado Art. 32 de la Ley Orgánica de la Administración de Reglamentos y Permisos, que faculta a

---

términos y condiciones establecidos por ley."

acudir en revisión ante el Tribunal Superior de decisiones de la J.A.C.L., ha de entenderse como aplicable a situaciones en que no se trate de negativa de permisos en zonas históricas o turísticas, *pues en tales casos aplica la norma revisora del Art. 5 de la Ley Núm. 374, ante; esto es, un recurso de revisión al tribunal directamente del dictamen emitido por A.R.P̃e.*

*Ambas disposiciones apelativas se mantienen hoy en día vigentes; debemos presumir que el legislador conocía de su existencia.* Bernier y Cuevas Segarra, *op. cit.*, págs. 329–330, y la jurisprudencia allí citada. En vista de que los estatutos aquí examinados son armonizables y de que no existe indicio de intención legislativa en contrario, no podemos tampoco aceptar ni concluir que un estatuto derogó tácitamente al otro. *Aponte v. Srio. de Hacienda, E.L.A.,* ante; *McCrillis v. Aut. Navieras de P.R.*, 123 D.P.R. 113 (1989); Bernier y Cuevas Segarra, *op. cit.*, págs. 331–332.

## III

Si bien, como regla general, nos merece gran peso la interpretación que realiza una agencia administrativa de aquellos estatutos que en especial le conciernen, *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87, 96 (1974), nos enfrentamos a una situación en que la agencia concernida —la J.A.C.L.— ha actuado de manera *no* conforme a derecho. *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858 (1989). La controversia relativa al mantenimiento y administración de las zonas históricas resulta, por múltiples razones, un asunto de gran importancia y desarrollo en la filosofía de planificación contemporánea, resultando así objeto de una rigurosa planificación y atención. Véase, en general, a 3 *Williams Am. Land Plan* Secs. 71A.01 *et seq.* (ed. rev. 1985). Sin pretensiones de especular, pueden existir variadas razones que motivaran al legislador a disponer un procedimiento apelativo especial como el aquí reseñado. Independiente-

mente de ello, damos fiel cumplimiento a nuestro deber de interpretar el lenguaje legislativo contenido en estas leyes para proveer así eficacia y fluidez a las mismas. *Entendemos, en consecuencia, que le asiste la razón a A.R.Pe. A tenor con el ordenamiento vigente, la J.A.C.L. carecía de jurisdicción para entender en los casos del epígrafe. Conforme al Art. 5 de la Ley Núm. 374, ante, el procedimiento correcto a ser utilizado por los ciudadanos y/o negocios aquí en controversia lo era instar un recurso de revisión directamente ante el Tribunal Superior.*

## IV

Por último, igualmente *concurrimos* con la Mayoría en su dictamen de que, a pesar que los propietarios de los negocios en controversia no acudieron ante el Tribunal Superior en revisión de la decisión de A.R.Pe., *éstos no deben ser privados de su derecho a revisar la misma.* Ello en vista de que fue la propia A.R.Pe. quien *erróneamente* los indujo a acudir ante la J.A.C.L. y de que dichas personas actuaron, en todo momento, con suma diligencia en defensa de sus intereses y planteamientos. *Cf. Rivera v. Depto. de Servicios Sociales,* 132 D.P.R. 240 (1992).

## RESOLUCIÓN

San Juan, Puerto Rico, a 2 de abril de 1993

Examinada la moción presentada por el apelante, Sr. Héctor Peña, se enmienda *nunc pro tunc* el primer párrafo de nuestra sentencia de 9 de marzo de 1993 para que se lea como sigue:

"Conforme a los fundamentos vertidos en esta opinión, se revocan las sentencias de instancia y se les reconocen a los peticionarios en los recursos CE-91-206, CE-91-202, CE-91-204, CE-91-215 y CE-91-198 (consolidados), a partir

de la devolución de nuestro mandato al tribunal de instancia, los términos que en derecho proceden para solicitar la reconsideración ante la Administración de Reglamentos y Permisos (A.R.Pe.), y posterior revisión judicial —de ser necesario— de las determinaciones de dicha agencia en este caso en el que se denegaba los permisos en cuestión."

*Publíquese.*

Lo acordó el Tribunal y certifica el señor Secretario General.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*