RECEIVED

DEC 2 1 1999

SERIALS DIVISION
GRADUATE LAW SCHOOL LIBRARY

# 99 DTA 193

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**

FRENTE LOICEÑOS UNIDOS, ASOCIACION DE RESIDENTES DE PIÑONES
Recurrentes

v.

JUNTA DE CALIDAD AMBIENTAL, CARIBE ASSOCIATES,
JUNTA DE PLANIFICACION
Recurridos

Núm. KLRA-98-00678

San Juan, Puerto Rico, a 1 de junio de 1999

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Aponte Jiménez y Giménez Muñoz

Aponte Jiménez, Juez Ponente

434

## TEXTO COMPLETO DE LA SENTENCIA

La Asociación de Residentes de Piñones, (la Asociación) nos solicita la revisión de una resolución emitida por la Junta de Calidad Ambiental (J.C.A.) mediante la cual dicha agencia certificó que la Junta de Planificación (J.P.), como agencia proponente, cumplió con el Art. 4(c) de la Ley Sobre Política Pública Ambiental en relación a la consulta de ubicación presentada por Caribe Associates Limited Partnership *("Caribe")* para el desarrollo de un complejo turístico en el Barrio Torrecilla Baja del municipio de Loíza. La J.C.A., la J.P. y Caribe nos han solicitado la desestimación del recurso. Sostienen que este foro apelativo carece de jurisdicción para atenderlo. Se basan en que el mismo fue presentado después de vencer el término jurisdiccional de treinta (30) días para revisar determinaciones administrativas el cual, según su tesis, se cuenta a partir de la publicación (edicto) del aviso ambiental donde la J.P. informa que ha sometido a la J.C.A. la D.I.A.F. y sobre la disponibilidad de dicho documento para la inspección pública.

En atención a lo anterior, emitimos resolución. Intimamos a la J.C.A., a la J.P. y a Caribe para que mostraran causa, si alguna hubiese, por la cual no deberíamos expedir el auto solicitado a los fines de dejar sin efecto la mencionada resolución y ordenarle a la J.C.A. que certifique si la J.P. cumplió con el Art. 4(c) de la referida Ley Sobre Política Pública Ambiental, 12 L.P.R.A. sec. 1124(c), luego de tener ante sí y evaluar la D.I.A.F. a la luz de sus propios comentarios y requerimientos formulados a la Declaración de Impacto Ambiental Preliminar (D.I. A.P.) y a su suplemento (D.I.A.S.). Dichas partes han comparecido. Reiteran la falta de jurisdicción de este Tribunal. Resolvemos conforme a lo intimado.

En la orden para mostrar causa que emitimos, establecimos los siguientes eventos procesales y factuales: La J.P. presentó ante la J.C.A. una Declaración de Impacto Ambiental Preliminar (D.I.A.P.) en relación con la consulta de ubicación sometida ante la primera por Caribe para el desarrollo de un complejo turístico en el Barrio Torrecilla Baja del municipio de Loíza. La Asociación de Residentes de Piñones, Inc. compareció ante la J.C.A. Mediante escrito intitulado *"Moción de Intervención, Comentarios y Oponiéndonos a Fragmentación de*

435

*Proyectos"*, que lleva fecha de 23 de enero de 1997, impugnó la D.I.A.P. sometida por la J.P. Alegaron que la misma sufría de serias deficiencias. Solicitaron que se descartaran los documentos sometidos y se exigiese la preparación de una D.I.A. que recogiera el impacto ambiental que ocasionaría el proyecto sometido. La J.C.A. nunca resolvió dicha comparecencia. Tampoco notificó a la Asociación sobre el procedimiento siguiente ante dicha agencia que culminó con la resolución recurrida.

El 3 de febrero del 1997, la J.C.A. notificó a la J.P. ciertas interrogantes sobre el propuesto proyecto que debían ser aclaradas mediante un suplemento a la D.I.A.P. ▓ relacionadas con varias de las deficiencias apuntadas por los recurrentes en su escrito. El 27 de octubre de 1997, la J.P. presentó ante la J.C.A. el referido suplemento. Informó que tal como se le requirió, lo estaba circulando al Departamento de Recursos Naturales y Ambientales (D.R.N.A.) y al Cuerpo de Ingenieros del Ejército de los Estados Unidos (en adelante, *"el Cuerpo de Ingenieros"*), para que esas instituciones emitiesen los *"comentarios pertinentes"*.

Así las cosas, el 9 de marzo de 1998, la J.C.A. le envía una comunicación a la J.P. En la misma le informa sus recomendaciones de tipo ambiental sobre el propuesto proyecto luego de haber analizado el suplemento (D.I. A.S.) a la D.I.A.P. La J.C.A. vuelve a requerirle a la J.P. que se obtengan los comentarios y recomendaciones del D.R.N.A. respecto a un estudio hidrológico-hidráulico realizado. Le solicitó, además, que se preparase una D.I. A.F., *"...donde se incorporen y discutan los comentarios y recomendaciones de las agencias, de la J.C.A. y del público en general que hayan comentado [la] D.I.A.P. y su suplemento"*. Le requirió, además, *"discutir [en la D.I.A.F.] interrogantes"* sobre *"los posibles problemas de inundaciones provocadas por el Río Grande de Loíza o por marejadas en eventos de fuertes lluvias"* del Cuerpo de Ingenieros, el D.R.N.A. y el Servicio Forestal del Departamento de Agricultura Federal, todo ello, de conformidad con la sección 5.5.6 del Reglamento sobre Declaraciones de Impacto Ambiental en lo sucesivo *"el Reglamento"*. En atención a lo anterior, la J.P. paralizó el trámite de la consulta hasta que Caribe preparase una D.I.A.F. para poder someterla a la J.C.A. donde recogiese y discutiese los extremos señalados por la J.C.A.

No obstante la referida comunicación de la J.C.A. para que la J.P. preparara una D.I.A.F., el 18 de marzo de 1998, antes de que la J.P. cumpliera con los extremos apuntados, la primera emitió la resolución recurrida. Determinó que la J.P. había cumplido con el Art. 4(c) de la Ley de Política Pública Ambiental, *supra*. Al emitir tal resolución no tuvo ante sí la D.I.A.F. con la discusión de los asuntos allí expresados y requeridos. Esa resolución no le fue notificada a la Asociación no empece su comparecencia ante la J.C.A. para comentar la D.I. A.P. sometida por la J.P. Cabe señalar, además, como dicho antes, que la J.P. había suspendido los procedimientos sobre la consulta de ubicación presentada por Caribe hasta que dicho desarrollador sometiera la D.I.A.F. donde se discutieran los comentarios vertidos por la J.C.A. en su referida misiva del 9 de marzo.

El 7 de julio de 1998, la J.P. presentó la D.I.A.F. No incluyó comentario alguno del D.R.N.A. Tampoco del Cuerpo de Ingenieros ▓ tal como se lo había requerido la J.C.A. Dos días después, la J.C.A. envió a la J.P. una comunicación acusando recibo de la D.I.A.F. Se limitó a informarle que debía notificar la presentación de la D.I. A.F. mediante publicación de un aviso ambiental, de conformidad con *"la sección 5.5.6.2 del Reglamento"* ▓ El aviso, publicado en el periódico por la J.P. el 11 de julio de 1998 se circunscribió a informar la presentación de la D.I.A.F. ante la J.C.A. y su accesibilidad al público en la J.P. Como se ve, la J.C.A. certificó que la J.P. cumplió con el Art. 4(c) de la Ley de Política Pública Ambiental antes de poder considerar si la D.I.A.F. discutía todos los señalamientos a la misma conforme sus propios comentarios y requerimientos.

En su comparecencia ante nos, tanto la J.C.A. como la J.P. y Caribe nos indican que no tenemos jurisdicción para atender los reclamos de la Asociación. Se basan, como antes expresado, en que el recurso fue presentado mucho después de haber transcurrido el término de treinta (30) días dispuesto en la sección 4.2 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. sec. 2172, contados a partir de la publicación en

el periódico del anuncio de la J.P. haciendo constar que sometió ante la J.C.A. la D.I.A.F. Parten de la premisa de que la resolución recurrida es la aprobación de la D.I.A.F. Un examen del recurso instado, sin embargo, refleja que la resolución recurrida no es esa, sino la emitida por la J.C.A. el 18 de marzo de 1998 mediante la cual dicha agencia certificó que la J.P. cumplió con el Art. 4(c) de la Ley de Política Pública Ambiental. De la misma se desprende que fue archivada en autos y notificada a varios funcionarios de la J.P., mas no a la Asociación, sin que en forma alguna advierta sobre el derecho a revisión judicial.

La sección 3.14 de la Ley de Procedimiento Administrativo Uniforme, (L.P.A.U.), 3 L.P.R.A. sec. 2164, claramente dispone que la orden o resolución de una agencia administrativa deberá notificarse a las partes a la brevedad posible y archivarse en autos copia de la orden o resolución final y de la constancia de la notificación. Parte se define como *"toda persona ... que se le permita intervenir o participar en la acción de una agencia."* *Id.,* sec. 3.1 (3 L.P.R.A. sec. 2102). Ciertamente, el propio Reglamento de la J.C.A. sobre declaraciones de impacto ambiental permite en sus secciones, de la 5.5.2 a la 5.5.2.2, la participación en el proceso no sólo de las agencias concernidas, sino del público en general. Igualmente requiere la sección 3.14, *supra,* que la orden o resolución advertirá a las partes el derecho a solicitar reconsideración o revisión de la misma, con expresión de los términos correspondientes, *Id.* Si bien es cierto que las órdenes y resoluciones a que se refiere dicha sección son las que se emiten luego de celebrada una vista, y que aquí no se celebró una, la sección 4.1 establece sin limitación que *"[l]as disposiciones de [ese] Capítulo serán aplicables a aquellas órdenes, resoluciones y provisiones dictadas por agencias o funcionarios administrativos que deban o puedan ser revisadas por el Tribunal de Circuito de Apelaciones mediante el recurso de revisión...".* No albergamos duda de que si la J.C.A. hubiese denegado la solicitud de intervención de la Asociación, como aparentemente hizo, esta última es una parte afectada que podría presentar un recurso de revisión ante este Foro de conformidad con la sección 4.2 de la L.P.A.U., 3 L.P.R.A. sec. 2172. Consiguientemente, por virtud de la citada sección 4.1, lo dispuesto en la sección 3.14, *supra,* referente a la forma de notificar y la información que se debe incluir, resulta de aplicación también a los procedimientos informales que celebre la J.C.A. donde no se celebra vista. Ello así, independientemente de que tal requisito de notificación en esa misma forma y manera resulta indispensable para que se cumpla con el debido procedimiento de ley.

A tenor de lo anterior, si la J.C.A. no le permitió a la Asociación intervenir, debió emitir una resolución y notificarla de la manera que contempla la L.P.A.U. en su sección 3.6 (3 L.P.R.A. sec. 2156) En la medida de que se trata de un pronunciamiento mediante el cual la agencia determina los derechos, obligaciones o privilegios que correspondan a una parte -sección 1.3 de la L.P.A.U., 3 L.P.R.A. sec. 2102(b)- adjudica y existe la obligación de notificar a una parte la denegatoria de su solicitud de intervención. Asimismo, y como parte en el proceso, se le debió también notificar la resolución del 18 de marzo de 1998. Dicha notificación tenía que advertir, además, sobre el derecho de revisión judicial de la resolución y el término para perfeccionarla. Al no cumplirse con estos requisitos, los términos jurisdiccionales no comenzaron a decursar en este caso --*Colón Torres v. A.A.A.,* **97 J.T.S. 60,** a la pág. 977-- quedando entonces el recurso sujeto sólo a la doctrina de incuria con respecto al término dentro del cual debía ser presentado por la Asociación.

Sobre ese mismo particular, resulta incomprensible el argumento de los recurridos en apoyo de su tesis. Dejan entrever, por un lado, que la J.C.A. no venía obligada, conforme a su propio Reglamento [5] a emitir comentario alguno luego de recibir la D.I.A.F.; razón ésta por la cual sostienen que el término para revisar de la Asociación comenzó a partir de la fecha que la J.P. publicó el aludido anuncio en el periódico. No obstante, por el otro, admiten la procedencia y corrección de la resolución recurrida emitida por la J.C.A. el 18 de marzo certificando que la J.P. cumplió con el Art. 4(c) de la Ley Sobre Política Pública Ambiental. De ser correcta su postura, la resolución de la J.C.A. el 18 de marzo de 1998, única en que se puede basar la J.P. para publicar el anuncio en el periódico sobre la presentación de la D.I.A.F. por ser la que la aprueba, realmente constituyó una actuación ociosa, lo que significa que para publicar el anuncio en cuestión no se hubiese requerido otro evento,

bajo las circunstancias que nos ocupan, que no fuese la presentación de la D.I.A.F. Si eso fuese así, ¿Porqué entonces la J.C.A. emitió la resolución del 18 de marzo de 1998?

Los hechos particulares de este caso nos mueven a descartar esa visión. En todo momento la J.C.A. asumió un rol activo y fiscalizador en este caso, como le compete, con respecto a las D.I.A. sometidas por la Junta. Tan es así que al comentar la D.I.A.S sometida por la J.P. le instruyó para que en la D.I.A.F., entre otros asuntos, *"discut[iera] los comentarios y recomendaciones de la[s] agencias, entidades y público en general que hayan comentado la D.I.A. Preliminar y su suplemento"* al igual que las interrogantes del Cuerpo de Ingenieros, D.R.N. A. y del Servicio Forestal del Departamento de Agricultura Federal sobre *"los posibles problemas de inundaciones provocadas por el Río Grande de Loíza o por marejadas en eventos de fuertes lluvias."* Resolver que, no obstante ello, la J.C.A. no tenía que evaluar la D.I.A.F para verificar si efectivamente la misma cumplía con sus comentarios, requerimientos y recomendaciones porque la sección 5.5.7.2 del Reglamento establece que la J.C.A. *"dará por terminado el proceso de evaluación y no emitirá comentarios a la D.I.A.F."* al presentarse ésta, desvirtúa en su totalidad el procedimiento anterior seguido por la J.C.A. en cumplimiento de las obligaciones que le impone la ley y su facultad de evaluación de la D.I.A. Las circunstancias concurrentes nos mueven a resolver sobre ese particular que la J.C.A., en este caso, debió emitir su resolución certificando que la J.P. cumplió con el Art. 4(c) de la Ley después de recibir la D.I.A.F de la J.P., no antes, y luego de constatar que sus requerimientos fueron cumplidos en la D.I.A.F. sometida. La obligación de evaluar que se le impone a la J.C. A. no significa actuar como un ente pasivo, sino fiscalizar el proceso para que se cumplan en la D.I.A.F. con sus comentarios y señalamientos.

De otra parte, la posición de la J.C.A., la J.P. y Caribe, en cuanto a que la Asociación no tenía derecho a una notificación de la resolución recurrida, es insostenible. Como se sabe, la intervención es el mecanismo procesal para que una persona con interés legítimo pueda participar en un procedimiento administrativo. 3 L.P.R.A. sec. 2155. La Asociación, en ánimo de ejercitar su derecho a participar en el proceso que le concede el Reglamento, oportunamente presentó una denominada moción de intervención con comentarios a la D.I.A.P. Solicitó que se descartase la D.I.A.P. La J.C.A. no se expresó respecto a esa comparecencia. Tampoco la rechazó. Es decir, nunca actuó ni resolvió esa comparecencia de la Asociación aunque en su escrito ante nos solicitando la desestimación del recurso afirma que la denegó.

Sobre el derecho a intervenir en nombre del interés público, idea desarrollada desde las décadas del 60 y 70, se ha reconocido legitimación para intervenir a ciertos grupos a los fines de asegurar que agencias administrativas protejan el interés público en la estética, la conservación y los aspectos recreacionales que se pueden afectar con el desarrollo. Véase, *Scenic Hudson Preservation Conference v. F.P.C.,* 354 F. 2d 608, 616 (2nd Cir. 1968), citado en Davis, *Administrative Law Treatise,* 2nd ed., K.C. Davis Pub., San Diego, 1980, Vol. 3, pág. 69. Este movimiento hacia la intervención de grupos ambientales y pro-consumidores se ha convertido en una fuerza dominante. Como nos advierte un comentarista norteamericano:

*"The demand for broadened public participation in the administrative process is usually premised upon the notion that the public staffs of agencies cannot be relied upon to present forcefully the views of consumer, environmental, minority, or other inadequately represented groups. According to some commentators this deficiency occurs because the public staffs are required to present a position that blends a number of interests and policies relevant to the regulatory scheme, with the result that the presentation of any discrete interest is bland and muted ... Broadened public participation in the administrative process is necessary and desirable in order to provide an expanded set of ideas, rewards, and incentives for regulators ... The cardinal fact that underlies the demand for broadened public participation is that government agencies rarely respond to interests that are not represented in their proceedings."*

Crampton, *The Why, Where and How of Broadened Public Participation in the Administrative Process*, 60 Geo. L.J. 525, 528-29 (1972), citado en Davis, *op. cit.*, Vol. 3, a la pág. 70.

La batalla librada para reconocer el *"derecho"* a intervenir en nombre del interés público ha ganado espacio, excepto por la interrogante de hasta dónde se extiende ese derecho. La atención en este asunto se ha dirigido a explorar los contornos de los derechos procesales de ese tipo de interventor y la cantidad de ayuda que debe proveérsele para facilitar la participación del público. Gellhorn, *Public Participation in the Administrative Process*, 81 Yale L.J. 3459, 361 (1972), citado en Davis, *op. cit.*

En esta jurisdicción se ha reconocido la legitimación de dichas organizaciones en casos judiciales donde está en juego la Ley Sobre Política Pública Ambiental. Véanse, a modo de ejemplo, *Misión Industrial v. Junta de Calidad Ambiental*, **98 J.T.S. 77**; *Asociación de Residentes de Piñones v. Junta de Planificación*, **97 J.T.S. 27** (voto particular el Juez Asociado Hernández Denton); *Salas Soler v. Secretario de Agricultura*, 102 D.P.R. 716, 724-725 (1974). Si un grupo ambiental tiene legitimación para demandar y, además, para acudir en revisión judicial de las determinaciones de la J.C.A. respecto a la implantación de la Ley Sobre Política Pública Ambiental, *Misión Industrial v. Junta de Calidad Ambiental, supra,* nos resulta obvio que también puede intervenir en los procedimientos administrativos al amparo de la mencionada ley no sólo ante la agencia proponente sino también ante la J.C.A. Resolver lo contrario sería un contrasentido.

En relación con el planteamiento de falta de jurisdicción, sólo nos resta adjudicar si los recurrentes incurrieron en incuria al presentar el recurso el 20 de noviembre de 1998. Resolvemos que no. Si bien es cierto que la resolución recurrida se emitió el 18 de marzo de 1998, la misma, como antes dicho, no se notificó a los recurrentes. El aviso en el periódico emitido por la J.P. se publicó el 11 de julio de 1998. El D.R.N.A. sometió sus comentarios el 8 de julio de 1998 y el Cuerpo de Ingenieros los suyos el 10 de agosto de 1998. No es hasta el 8 de octubre de 1998 que la J.P. adjudica la consulta sin haber emitido resolución final al respeto. En los autos no hay constancia de que a los recurrentes se les haya notificado la resolución recurrida en momento alguno. Ante las circunstancias particulares expuestas, resolvemos, pues, que la dilación en presentar el recurso que nos ocupa el 20 de noviembre de 1998, no fue irrazonable y que los recurrentes no incurrieron en incuria. Cf., *Carabani et al v. ARPE,* 132 D.P.R. 938 (1993). En base a todo lo anterior, se justifica que deneguemos las solicitudes de desestimación presentadas. ■

Concedido lo anterior, repasemos las normas relacionadas con la preparación de las declaraciones de impacto ambiental. El aludido Art. 4(c) de la Ley Sobre Política Pública Ambiental, *supra*, dispone:

*"Se ordena que al máximo grado posible se interpreten, implementen y administren todas las leyes y cuerpos reglamentarios vigentes en estricta conformidad con la política pública enunciada en este Capítulo. Así mismo, se ordena a los departamentos, agencias, corporaciones públicas, municipios e instrumentalidades del Estado Libre Asociado de Puerto Rico y sus subdivisiones políticas, que en la implementación de la política pública de este Capítulo, cumplan con las siguientes normas:*

*(a).....*

*(b).....*

*(c) Incluir en toda recomendación o informe propuesta de legislación y emitir, antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente el ambiente, una declaración escrita y detallada sobre:*

*(1) El impacto ambiental de la legislación propuesta, de la acción a efectuarse o de la decisión a promulgarse;*

*(2) cual[es]quiera efectos adversos al medio ambiente que no podrán evitarse si se implementare la propuesta legislación, si se efectuare la acción o se promulgare la decisión gubernamental;*

*(3) alternativas a la legislación propuesta, o la acción o decisión gubernamental en cuestión;*

*(4) la relación entre los usos locales a corto plazo del medio ambiente del hombre y la conservación y mejoramiento de la productividad a largo plazo, y*

*(5) cualquier compromiso irrevocable o irreparable de los recursos que estarían envueltos en la legislación propuesta si la misma se implementara, en la acción gubernamental si se efectuara o en la decisión si se promulgara. "*

Ese mismo Artículo también establece que antes de emitirse la correspondiente declaración de impacto ambiental se deberá consultar y obtener la opinión, según sea el caso, de cualquier otro organismo de gobierno con jurisdicción o inherencia sobre la legislación propuesta, la acción a efectuarse o la decisión gubernamental a promulgarse. Copias de dicha declaración y sus opiniones deben enviarse a los organismos consultados, a la J.C. A., al gobernador y a la asamblea legislativa. Además, se tendrán a la disposición del público para su examen. Finalmente, la J.C.A. tiene la facultad para aprobar los reglamentos necesarios para implementar el inciso (c) del Art. 4, 12 L.P.R.A. sec. 1124 (c). ▮

Ejerciendo esa facultad de reglamentar, la J.C.A. creó en el año 1972 el Manual para la Preparación, la Evaluación y el Uso de las Declaraciones de Impacto Ambiental (en adelante *"el Manual")*. Asimismo, poco más de una década después, promulgó el Reglamento Núm. 3106 sobre Declaraciones de Impacto Ambiental. La sección 5.1.1 de dicho reglamento dispone que: *"La agencia proponente de un proyecto o acción será responsable por la preparación de la D.I.A. correspondiente conforme a las Guías [promulgadas]."* Quiere ello decir que tanto el Reglamento como las guías que contiene el Manual inciden en el proceso de preparar una D.I. A.

Para cumplir con la política pública ambiental preceptuada en el Art. 4(c), el Manual y el Reglamento, toda entidad gubernamental que se proponga realizar alguna acción o emitir alguna decisión que afecte significativamente el ambiente deberá cumplir con un trámite procesal para la preparación de una D.I.A. El Manual establece algunas indicaciones generales sobre cuándo es necesaria la preparación de una D.I.A. Brinda varios ejemplos de acciones que pueden afectar significativamente el ambiente. Véase, Guía 9 del Manual.

El primer paso será preparar una D.I.A.P., sección 5.5.2 del Reglamento. La agencia proponente deberá preparar la D.I.A.P. cuanto antes en el proceso decisional, previo a establecer cualquier compromiso de naturaleza irrevocable de los recursos o del ambiente, secciones 5.5.2.1 y 5.5.1 del Reglamento. Una vez preparada la D.I.A.P., deberá circularse a la J.C.A., a las agencias con jurisdicción o inherencia en el asunto, y al público general, para que éstos emitan los comentarios que estimen pertinentes. El aviso al público deberá realizarse advirtiendo su derecho a comentar la D.I.A.P., *Id.*, secciones 5.5.2.1 y 5.5.2.2 del Reglamento.

Recibido los comentarios de las agencias y del público, la J.C.A. hará los suyos. De creerlo necesario, podrá requerir a la agencia proponente un suplemento a la D.I.A.P., donde ésta discutirá los comentarios de las agencias y los del público, cuando estime que es necesario para una evaluación adecuada del impacto ambiental de la acción propuesta, sección 5.5.2.3 del Reglamento. Finalmente, la agencia proponente presentará una D.I.A.

F. en la cual discutirá los comentarios formulados por cada una de las agencias consultadas, por el público y por la J.C.A., y expondrá las modificaciones pertinentes a la acción propuesta como consecuencia, sección 5.5.6. La agencia proponente deberá notificar al público de la disponibilidad de la D.I.A.F. para inspección, sección 5.5.7.1.

El trámite descrito, ciertamente persigue que la agencia o entidad gubernamental proponente considere en detalle las consecuencias ambientales significativas vinculadas a la acción propuesta. *Misión Industrial v. Junta de Calidad Ambiental, supra*, a la pág. 1103. Dos propósitos subyacen en esta clara obligación: de un lado, se procura que la agencia proponente estudie a fondo las consideraciones ambientales de sus acciones. Del otro, se persigue que otras agencias del gobierno y el público en general estén informados de los impactos ambientales, se involucren activamente en el proceso, y tomen las medidas o realicen las acciones que estimen procedentes en relación al proyecto propuesto. Véase, Jiménez, Alberto, Nota, *Ley Sobre Política Pública Ambiental de 1970: Un Breve Análisis*, 41 Rev. Jur. U.P.R. 115, 128 (1972).

De otro lado, la J.C.A. es el organismo administrativo con la facultad para examinar cuidadosamente y verificar que se hayan cumplido con los requisitos procesales y sustantivos fijados por la Ley y finalmente aprobar las D.I.A. *Misión Industrial v. Junta de Calidad Ambiental, supra*, a la pág. 1104; *García Oyola v. Junta de Calidad Ambiental*, **97 J.T.S. 25**, a la pág. 663. En ese sentido, sin duda, la labor fiscalizadora de la J.C.A. es de vital importancia para la consecución de la política ambiental de la Isla. *Misión Industrial v. Junta de Calidad Ambiental, supra*. A esos fines tiene facultad para, entre otros, *"[t]omar todas las medidas adecuadas para evitar cualquier daño al ambiente y a los recursos naturales que sea considerado por la Junta como irreparable y contrario al interés público"; "[e]xpedir órdenes de hacer o de no hacer y de cese y desistimiento para que se tomen las medidas preventivas o de control necesarias a juicio de la Junta, para lograr los propósitos [de la Ley] y los reglamentos que al amparo [de la] mism[a] se promulguen"*. Igualmente, puede *"[e]mitir órdenes provisionales, previa notificación a la Junta de Planificación, prohibiendo la construcción de instalaciones cuyos planos y especificaciones demuestren que hay violación a [la Ley] y sus reglamentos."* Id., Art. 11 de la Ley Núm. 9 de 18 de junio de 1970 (12 L.P.R.A. sec. 1131 (14); (22) y (25).

Referente a la función judicial sobre las determinaciones relacionadas a la preparación de una D.I.A., la misma se circunscribe a examinar si la J.C.A. ha cumplido cabalmente con sus obligaciones legales impuestas. En ese sentido, nos compete velar porque se haya dado estricto cumplimiento al esquema estatutario y reglamentario que rige la J.C.A. *Misión Industrial v. Junta de Calidad Ambiental*. Al revisar el cumplimiento con la Ley Sobre Política Pública Ambiental, debemos primero examinar si la J.C.A. cumplió con sus obligaciones procesales bajo el susodicho Art. 4(c). Véase, *Izaak Walton League of America v. Marsh*, 655 F.2d 346, 371-72 (1981).

Con ese marco en mente, analicemos el trámite procesal para la aprobación de la D.I.A. que nos ocupa. El 9 de marzo de 1998, la J.C.A. le envió una carta a la J.P. Le requirió que discutiera varios señalamientos relacionados precisamente con el impacto ambiental del proyecto en el área a desarrollarse. A esos fines le instruyó que preparase una D.I.A.F. en la que se discutieran varios señalamientos de interés para la J.C.A. El 18 de marzo de 1998, la J.C.A., sin tener ante sí la aludida D.I.A.F., certifica, mediante la resolución recurrida, que se había cumplido con el trámite dispuesto por el Art. 4(c) de la Ley. No es hasta el 7 de julio de 1998, casi cuatro (4) meses después, que la J.P. presenta la D.I.A.F. Omitió los comentarios requeridos. Al respecto no logramos entender ¿cómo la J.C.A. pudo certificar el 18 de marzo que la J.P. había cumplido con el trámite del Art. 4(c) cuando aún no había tenido la oportunidad de examinar si la D.I.A.F. discutía adecuadamente sus comentarios así como los de la Asociación y las otras agencias concernidas con jurisdicción o inherencia en el asunto tal y como lo dispuso expresamente en sus comentarios a la D.I.A.S.?

Igualmente, la J.C.A. no podía autorizar a la J.P., como lo hizo, a que publicara un aviso ambiental en el periódico de conformidad en la sección 5.5.6.2 de su Reglamento. Dicha sección alude a que la agencia proponente podrá considerar la D.I.A.F. cuando, en adición a otras, *"[l]a preparación de una D.I.A. Final constituya una repetición de la información incorporada a la D.I.A. Preliminar."* No debe existir la más leve duda de que aquí la D.I.A.F. no constituia una repetición de la información incorporada en la D.I.A.P. Todo lo contrario, la J.C.A. previamente exigió a la J.P. que discutiera en la D.I.A.F. varios aspectos relacionados con sus comentarios a la D.I.A.S. Estando impedida la J.P. para considerar la D.I.A.P. como la D.I.A.F. en virtud del propio Reglamento de la J.C.A., la única autorización para que se publicara el aviso lo hubiese constituido entonces la resolución del 18 de marzo de 1998 donde se hizo constar que la J.P. cumplió con el Art. 4(c) de la Ley.

Bajo las circunstancias atinentes es imposible concluir que la J.C.A. haya ejercido apropiadamente su función de velar por el cumplimiento de los requisitos procesales de la Ley Sobre Política Pública Ambiental. Para poder certificar que la J.P. había cumplido cabalmente con los requisitos del Art. 4(c) y su reglamento, la J.C.A., en un caso como el que nos ocupa, tenía que examinar la D.I.A.F. a los fines de evaluar y verificar si en la misma se discutían los señalamientos incluidos en sus comentarios a la D.I.A.P. y a la D.I.A.S., cosa que no hizo, **[8]** antes de certificar que la J.P. cumplió con las disposiciones de la Ley Sobre Política Pública Ambiental.

Finalmente, no se nos escapa que nuestra intervención con las determinaciones de la J.C.A., como con cualquier otra determinación administrativa, debemos llevarla a cabo limitándonos a examinar si las mismas están sostenidas por la evidencia que obra en el expediente administrativo. *Misión Industrial v. Junta de Calidad Ambiental.* Sin embargo, los autos revelan que ante los hechos narrados, la J.C.A. no cumplió con su deber de evaluar la D.I.A.F. antes de certificar que la J.P. cumplió con el Art. 4(c). Esa manera de actuar de la J.C.A., a juicio nuestro, no amerita la deferencia que de ordinario brindamos a sus determinaciones.

Con estos antecedentes, dejamos sin efecto la resolución recurrida donde la J.C.A. certifica que la J.P. cumplió con el Art. 4(c) de la Ley Sobre Política Pública Ambiental. Devolvemos el caso a la J.C.A. para que, luego de examinar la D.I.A.F. presentada por la J.P. y verificar que la misma incluye y discute adecuadamente todos los comentarios que formuló en su comunicación del 9 de marzo de 1998, proceda entonces a certificar si la J.P. cumplió o no con su obligación legal de preparar una D.I.A.F. en relación a la consulta de ubicación presentada por Caribe, todo ello conforme el Art. 4(c) de la Ley, su Reglamento, el Manual y sus comentarios y señalamientos a la D.I.A.P. y a la D.I.A.S.

Lo acuerda el Tribunal y lo certifica la Señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 99 DTA 193**

**1.** A esos fines, instruyó a la J.P. que aclarara, entre otros, los siguientes extremos: Descripción del proyecto en términos del estacionamiento y su impacto sobre la hidrología del agua de éste construirse soterrado; descripción del ambiènte físico e impactos ambientales; descripción de desperdicios sólidos; las descargas de aguas sanitarias; y la ubicación de las áreas inundables.

**2.** El 8 de julio de 1998, el D.R.N.A. presentó sus comentarios a la D.I.A.P. y a su suplemento. El 10 de agosto de ese mismo año, el Cuerpo de Ingenieros hizo lo propio. De los autos no surge que esos comentarios hayan sido incorporados a la D.I.A.F. por la J.P.

**3.** Sección 5.5.6.2: Si la agencia proponente determina considerar la D.I.A. Preliminar como D.I.A. Final, deberá notificar al público de su determinación conforme a lo dispuesto por la Sección 5.5.2.2 de este Reglamento, *Id.*

Nótese que la J.P., en este caso, no podía considerar la D.I.A.P. como D.I.A.F. sin violar el propio Reglamento de la J.C. A., ya que de conformidad con la Sección 5.5.6.1 de éste la agencia proponente podrá considerar la D.I.A.P. como D.I.A.F. sólo cuando:

"*a. La DIA Preliminar preparada satisfaga todos los requisitos del Artículo 4(c) de la Ley Número 9 del 18 de junio de 1970, según enmendada y de este Reglamento.*

*b. Los comentarios hechos sobre la DIA Preliminar sean favorables.*

*c. La preparación de una DIA Final constituya una repetición de la información incorporada a la DIA Preliminar.*

*ch. No existan comentarios de importancia que considerar en una DIA Final, y*

*d. Cuando la Junta así lo recomiende.*"

A tenor de los comentarios de la J.C.A. a la D.I.A.P. y a la D.I.A.S. no quedan satisfechos los requisitos del Art. 4(c) de la Ley Sobre Política Pública Ambiental por cuanto se le requirió a la J.P. que integrase y discutiese en la D.I.A.F. varios aspectos señalados por la J.C.A. Tomando ello así, no se puede considerar que los comentarios a la D.I.A.P. eran favorables. Menos aún, que la D.I.A.F. constituia una repetición de la información incorporada a la D.I.A.P. o que no existían comentarios de importancia que considerar.

**4.** Si la agencia decide denegar una solicitud de intervención en un procedimiento adjudicativo notificará su determinación por escrito al peticionario, los fundamentos para la misma y el recurso de revisión disponible.

**5.** Sección. 5.5.7.2: La Junta de Calidad Ambiental dará por terminado el proceso de evaluación y no emitirá comentarios a la DIA Final.

**6.** Resulta también insostenible la proposición de la J.C.A., la J.P. y de Caribe de que el término para acudir en revisión judicial de la determinación de la primera comenzó a decursar desde que se publicó el aviso ambiental sobre la disponibilidad de la D.I.A.F., y que con tal aviso cumplió con notificar a la Asociación. La D.I.A.F. no es realmente la determinación administrativa en este caso. La determinación administrativa realmente surge cuando la J.C.A. certifica que la agencia proponente cumplió con el trámite prescrito en el Art. 4(c) de la Ley Sobre Política Pública Ambiental, *supra*; o sea, si preparó una adecuada D.I.A.F.

**7.** Se faculta a la Junta de Calidad Ambiental para aprobar reglamentos con el propósito de implementar las disposiciones de este inciso. *Id.*

**8.** Esto empece a la disposición reglamentaria que dispone que la J.C.A. no comentará la D.I.A.F y dará por terminado el proceso, sección 5.5.7.2 del Reglamento. El único alcance que le podemos otorgar a esa norma es que si la J.C.A. no lo estima pertinente, porque entiende que se ha cumplido con la ley, no existe razón por la cual seguir comentando la D.I.A.P. Sin embargo, siendo dicha agencia la responsable de fiscalizar y aprobar las D.I.A. no puede acreditar que se ha cumplido con el Art. 4 (c) sin tener ante su consideración la versión final de ésta cuando antes ha manifestado sugerencias y señalamientos para evitar el impacto ambiental de un proyecto al comentar, como aquí, la D.I.A.P. y la D.I.A.S. y también ha requerido que dichos señalamientos se incorporen en la D.I.A.F.