

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ivonne Molini Gronau<br><br>     Peticionaria<br><br>          v.<br><br>Corporación de Puerto Rico para la Difusión Pública, et al.<br><br>     Recurrida | Certiorari<br><br>2010 TSPR 140<br><br>179 DPR ____ |

Número del Caso: CC-2009-1097


Fecha: 20 de julio de 2010

Tribunal de Apelaciones:

> Región Judicial de San Juan-Panel III

Juez Ponente:

> Hon. Héctor Cordero Vázquez


Abogados de la Parte Peticionaria:

> Lcdo. Michael Corona Muñoz
> Lcdo. Pedro J. Quiñones Alvarez

Abogados de la Parte Recurrida:

> Lcdo. Carlos George
> Lcdo. Dimitri González Izquierdo


Materia: Solicitud de Injunction Preliminar y permanente por violación de derechos Constitucionales, Daños y Perjuicios y Sentencia Declaratoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Ivonne Molini Gronau<br><br>     Peticionaria<br><br>          v.<br><br>Corporación de Puerto Rico para la Difusión Pública, *et al.*<br><br>     Recurrida | CC-2009-1097 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 20 de julio de 2010.

Comparece ante nos Ivonne Molini Gronau, en adelante, la peticionaria, solicitando la revisión de una Sentencia emitida por el Tribunal de Apelaciones. Mediante dicho dictamen, el foro apelativo intermedio revocó la determinación del Tribunal de Primera Instancia que declaró Con Lugar el remedio interdictal solicitado por la peticionaria.

Veamos los hechos que dieron génesis a la controversia de autos.

I

Conforme surge del expediente ante nuestra consideración, la peticionaria laboraba como Gerente de Noticias en la Corporación de Puerto Rico para la Difusión Pública, en adelante, la Corporación.

El 14 de mayo de 2009, el Presidente de la Corporación, Israel Cruz Santiago, cursó una comunicación titulada "Estado de Emergencia Fiscal" al personal de la Corporación. En dicha misiva, el Presidente de la Corporación le informó al personal que, ante la crisis fiscal por la que atravesaba el Gobierno de Puerto Rico, se le habían reducido sustancialmente los presupuestos a las agencias gubernamentales. En consecuencia, el Presidente de la Corporación significó que se estaba elaborando un plan dirigido a reducir los gastos de la Corporación.

El 17 de julio de 2009, el Presidente emitió una nueva comunicación en la que indicó que la reducción del presupuesto de la Corporación era de cinco millones doscientos cincuenta y dos mil dólares ($5,252,000), en comparación con el presupuesto de año anterior. Además, expresó que la Junta de Directores de la Corporación había dado instrucciones para que se adoptara un plan de economías para hacer frente al difícil escenario fiscal. Sobre el particular, el Presidente de la Corporación en su alocución anunció la suspensión o reducción de algunos beneficios laborales como salarios, aumentos, dietas y

aportaciones, *inter alia*. Las medidas de austeridad anunciadas incluyeron la reducción de una hora de la jornada laboral diaria.

Sin embargo, el 5 de agosto de 2009, el Presidente de la Corporación notificó que, ante la oposición de los empleados y reclamos de la Unión General de Trabajadores, había decidido dejar sin efecto la reducción de la jornada laboral. Así las cosas, el 6 de agosto de 2009, el Presidente de la Corporación circuló una misiva en la que informó que ante la crisis fiscal la Corporación evaluaría decretar un Plan de Cesantías Gerenciales.

En lo que nos respecta, el 28 de septiembre de 2009, la peticionaria fue notificada de su cesantía conforme al plan creado por la Corporación. Esa acción se fundamentó en el Reglamento de Personal para los Empleados Gerenciales del Servicio de Carrera de la Corporación, en adelante, el Reglamento. Surge de la comunicación remitida, que las cesantías fueron parte de la "decisión de la Corporación de implementar de (sic) un Plan de Cesantías el cual fue avalado por la Junta de Directores de la Corporación el 15 de julio de 2009".[1]

A su vez, en el escrito, se le notificó a la peticionaria que la cesantía sería efectiva transcurridos treinta (30) días contados a partir de su notificación y que tenía disponible un término de quince (15) días para expresar su posición por escrito o para solicitar una

---

[1] Apéndice de la petición de *certiorari*, pág. 292.

vista administrativa informal. Además, se le informó a la peticionaria de su derecho de apelar la decisión ante el Comité de Apelaciones de la Corporación en un término de treinta (30) días.

El 22 de octubre de 2009, la peticionaria presentó una Demanda ante el Tribunal de Primera Instancia. En la misma, la peticionaria solicitó un *injunction* preliminar y permanente, sentencia declaratoria y compensación por daños y perjuicios. La peticionaria adujo que el Plan de Cesantía estatuido violaba los postulados del debido proceso de ley, del principio de mérito y de otros derechos según reconocidos por el Reglamento.

En su alegación responsiva, la Corporación arguyó que el foro con jurisdicción para atender la controversia instada era el Comité de Apelaciones de la Corporación y no el tribunal.

Evaluados los argumentos, el Tribunal de Primera Instancia emitió Sentencia. En su dictamen, el foro de instancia hizo constar como hechos no controvertidos que la Junta de Directores de la Corporación había aprobado el Plan de Cesantías y que esa alternativa fue seleccionada por esa entidad tras evaluar las cinco (5) opciones sometidas por el Presidente de la Corporación. El foro primario determinó que la Junta de Directores de la Corporación había sido la autoridad que tomó la decisión impugnada. Por lo tanto, y en virtud del Reglamento, ese foro concluyó que el Comité de Apelaciones de la

Corporación no tenía jurisdicción para revisar los reclamos sobre la cesantía efectuada. Ante esto, el Tribunal de Primera Instancia dictaminó que la notificación de la decisión había sido defectuosa al referir a la peticionaria a un foro administrativo que carecía de jurisdicción.

En consecuencia, el foro primario declaró Con Lugar el *injunction* solicitado y dejó sin efecto la cesantía de la peticionaria, por entender que la notificación de la cesantía había sido defectuosa. El Tribunal de Primera Instancia no entró a considerar los méritos de las alegaciones de la peticionaria. Sobre el particular, ese tribunal expresó que "[e]n lo que respecta a la impugnación del plan de cesantías... a los efectos de que no cumple con el Reglamento de Personal... ni con el principio de mérito, resolvemos que es prematuro, habida cuenta que no se ha configurado la cesantía".[2]

Inconforme, la Corporación acudió ante el Tribunal de Apelaciones. Ante dicho foro apelativo intermedio, la Corporación alegó que las cesantías habían sido efectuadas por el Presidente de la Corporación y no por la Junta de Directores de la Corporación. Sin embargo, la Corporación admitió que la Junta de Directores había escogido el Plan de Cesantías implantado entre otras alternativas sugeridas por el Presidente de la Corporación. Al respecto, la Corporación expuso que "[u]na vez evaluados los Planes, la

---

[2] Sentencia del Tribunal de Primera Instancia, pág. 7.

Junta de Directores aprobó el Plan denominado como `C´ el cual consistía de la eliminación de cincuenta y tres (53) puestos entre los cuales habían veintiún (21) empleados gerenciales".[3]

En la alternativa, la Corporación planteó que, de entenderse que el Comité de Apelaciones carecía de jurisdicción por haber sido una decisión de la Junta de Directores, lo que procedía era atender los méritos de la Demanda y no la revocación automática de las cesantías.

El 18 de noviembre de 2009, el Tribunal de Apelaciones revocó la Sentencia del foro primario. El foro apelativo intermedio concluyó que la decisión impugnada era revisable ante el Comité de Apelaciones de la Corporación al ser una determinación del Presidente y no de la Junta de Directores de la Corporación. Sin embargo, ese foro dispuso "en equidad" que el término de treinta (30) días para acudir ante el Comité de Apelaciones de la Corporación comenzaría a transcurrir a partir de la notificación de su Sentencia.

Insatisfecha, la peticionaria acude ante nos. Junto con su petición de *certiorari* acompañó una Moción en Auxilio de Jurisdicción. En su escrito, la peticionaria adujo que el Tribunal de Apelaciones había incidido al revocar el *injunction* concedido por el foro primario y referir el asunto al Comité de Apelaciones de la Corporación.

---

[3] Apéndice de la petición de *certiorari*, pág. 160.

El 30 de diciembre de 2009, emitimos una Resolución en la que denegamos la Moción en Auxilio de Jurisdicción y concedimos término a la Corporación para que se expresara en cuanto al recurso de *certiorari*. Contando con la comparecencia de las partes procedemos a resolver.

II

En el recurso de autos, debemos resolver si la cesantía impugnada por la peticionaria es revisable ante el Comité de Apelaciones de la Corporación o ante el Tribunal de Primera Instancia. De determinarse que la cesantía era revisable en primera instancia por el foro judicial, compete dictaminar el remedio al que tiene derecho la peticionaria ante el defecto de la notificación.

La Corporación de Puerto Rico para la Difusión Pública es una corporación pública creada por la Ley Núm. 216 de 12 de septiembre de 1996, según enmendada, 27 L.P.R.A. sec. 501 *et al*. Al aprobarse la Ley Núm. 216, *supra*, esa entidad pública dejó de ser una subsidiaria de la Autoridad de Teléfonos y se creó como una autoridad independiente regida por una Junta de Directores. *Íd*. El propósito de esa medida legislativa fue que la Corporación contara con la autonomía operacional necesaria para brindar un servicio público eficiente. Art. 2 de la Ley Núm. 216, *supra*, 27 L.P.R.A. sec. 502.

En lo pertinente, la precitada Ley Núm. 216 en su Art. 3 establece que la Junta de Directores ejerce los

poderes, facultades y deberes de la Corporación y determina su política operacional y administrativa. La Junta de Directores nombra al Presidente de la Corporación y determina sus funciones, responsabilidades y deberes. 27 L.P.R.A. sec. 503

Entre sus funciones, la Junta de Directores viene llamada a "determina[r] la distribución y el uso de su presupuesto" y tiene facultad para crear la reglamentación que estime pertinente para la consecución de sus fines, propósitos y actividades. *Íd*; *Guzmán v. Calderón*, 164 D.P.R. 220 (2005). Por su parte, el Presidente de la Corporación tiene a su cargo la administración general de la Corporación. Art. 3 de la Ley Núm. 216, *supra*.

El personal de la Corporación está excluido de las disposiciones de la ley de personal. Sin embargo, la Corporación debe ceñirse a las normas que impone el principio de mérito. *Íd*.

En lo pertinente, la Corporación adoptó el Reglamento Núm. 6869 de 9 de agosto de 2004, conocido como Reglamento de Personal para los Empleados Gerenciales del Servicio de Carrera de la Corporación de Puerto Rico para la Difusión Pública. Posteriormente, este Reglamento fue enmendado por el Reglamento Núm. 7603 de 3 de noviembre de 2008. Esa enmienda aclaró y dispuso sobre las garantías procesales a las que tienen derecho los empleados gerenciales en caso de suspensión o destitución. En particular, la enmienda incorporó el inciso 10 a la Sección 11 del Reglamento.

Este inciso establece un procedimiento de revisión ante el Comité de Apelaciones de la Corporación de algunas determinaciones de la agencia.

Por su parte, la Sec. 11.11(5)(c) del Reglamento, dispone en lo pertinente:

> El Comité tendrá facultad para revocar, confirmar, o enmendar las decisiones tomadas a nivel gerencial del más alto nivel jerárquico, **excepto las decisiones tomadas por la Junta de Directores de la Corporación**. (Énfasis nuestro).

De lo anterior, se puede colegir que existen decisiones gerenciales que no son revisables ante el Comité de Apelaciones de la Corporación ya que fueron dictaminadas por la Junta de Directores de la Corporación. Esta disposición limita el poder del Comité de Apelaciones de la Corporación al no conferirle jurisdicción para intervenir con las determinaciones del cuerpo superior de la Corporación, a saber, la Junta de Directores de la Corporación. De igual forma, la Sec. 11(6)(c) del Reglamento le confiere jurisdicción al Comité de Apelaciones de la Corporación para revisar las **decisiones del Presidente** "relacionadas con determinaciones administrativas que puedan afectar o incidir en el principio de mérito".

El término para apelar una determinación ante el Comité de Apelaciones de la Corporación es de treinta (30) días y el mismo es "final e improrrogable, por lo que el Comité carecerá de jurisdicción para entender en cualquier caso en que la apelación se haya interpuesto fuera de

dicho término". Sec. 11(7) del Reglamento. Sabido es que la ausencia de jurisdicción elimina la autoridad de un foro para atender una controversia. *González v. Mayagüez Resort & Casino*, res. en 10 de septiembre de 2009, 176 D.P.R. ___ (2009), 2009 T.S.P.R. 140, 2009 J.T.S. 143; *Vázquez v. A.R.P.E.*, 128 D.P.R. 513 (1991).

La Sec. 11.4(1) del Reglamento regula el proceso de cesantías cuando éstas son necesarias "[d]ebido a la eliminación de puestos por falta de trabajo o fondos". Esta sección permite al Presidente de la Corporación determinar el número de puestos a suprimirse o eliminarse. Sin embargo, esto último no limita las facultades concedidas a la Junta de Directores de la Corporación por la Ley Núm. 216, *supra*, y por el Reglamento. El propio Reglamento establece que la "Corporación podrá decretar cesantías" y este tipo de medidas es afín con las facultades de la Junta de Directores de la Corporación de ejercer los "poderes, facultades y deberes de la Corporación" para determinar su política administrativa y operacional. Véase, Art. 3 de la Ley Núm. 216, *supra*.

La Sec. 11.4(1) del Reglamento no delega al Presidente de la Corporación la autoridad exclusiva en la toma de decisiones administrativas de personal. Aunque la Junta de Directores de la Corporación puede delegar varias de sus facultades al Presidente, nada prohíbe que la Junta realice determinaciones que involucren asuntos presupuestarios como lo es un plan de cesantías. Como

mencionamos, si ese proceder es decretado por la Junta de Directores de la Corporación no sería revisable ante el Comité de Apelaciones. Sec. 11.11(5)(c) del Reglamento.

### III

Dentro del marco jurídico antes enunciado, procedamos a resolver las controversias ante nuestra consideración.

*A priori*, debemos resolver si el Comité de Apelaciones de la Corporación tenía jurisdicción para revisar la determinación impugnada. Resolvemos en la negativa.

### A

Conforme el ordenamiento jurídico antes expuesto, no albergamos duda de que la Junta de Directores de la Corporación está facultada por el ordenamiento jurídico para tomar decisiones tan transcendentales para el presupuesto de la Corporación, como lo es determinar y aprobar un Plan de Cesantías.[4] El Plan de Cesantías impugnado es una decisión atribuible a la Junta de Directores, y como tal, irrevisable por el Comité de Apelaciones de la Corporación.

Precisamente, el Plan de Cesantías Gerenciales revela que la Junta de Directores de la Corporación, en el ejercicio de sus poderes, determinó la distribución y el uso de su presupuesto con las cesantías notificadas.[5] De

---

[4] Ciertamente, esta autoridad está limitada por las exigencias del debido proceso de ley, del principio de mérito y del Reglamento.

[5] Apéndice de la petición de *certiorari*, págs. 260-266.

hecho, esta misiva expresa que "[e]l Plan de Cesantías aprobado por la Junta de Directores fue basado en el escenario de eliminar cincuenta y tres (53) puestos de la Corporación, **entre los cuales se identificaron veintiún (21) puestos gerenciales**".[6] Uno de los puestos gerenciales expresamente identificado y eliminado por el Plan de Cesantías Gerenciales fue el de la peticionaria. Con su aval, la Junta de Directores de la Corporación acogió esa determinación como suya. En otras palabras, se procedió con ese Plan toda vez que la Junta de Directores de la Corporación así lo determinó. En su oposición a la petición de *certiorari*, la Corporación no nos pone en condición de llegar a otra conclusión.

La decisión impugnada y recibida por la peticionaria expresamente concede que el Plan de Cesantías Gerenciales fue aprobado por la Junta de Directores de la Corporación. Además, la Corporación no cuestiona los siguientes hechos: (1) que la Junta de Directores aprobó el plan de cesantías implantado; y (2) que la Junta de Directores seleccionó esta medida de entre cinco (5) opciones que tuvo ante su consideración. Ante este escenario fáctico, debemos coincidir con el foro primario en que la decisión es irrevisable ante el ente administrativo por disposición expresa del Reglamento.[7] Lo contrario sería hacer

---

[6] *Íd.*, pág. 265. (Énfasis nuestro).

[7] A igual conclusión llegó el Tribunal de Primera Instancia en el Caso Civil Núm. KPE-2009-3277. Con anterioridad a la presentación de la Demanda que hoy nos ocupa, dos (2) empleadas de la Corporación impugnaron sus respectivas cesantías. El foro primario emitió una

abstracción de lo dispuesto de manera meridiana en la Sec. 11.11(5)(c) del Reglamento.

Por lo tanto, a la luz de los fundamentos esbozados concluimos que el **Comité de Apelaciones no tiene jurisdicción para atender esta controversia.**

B

Por último, debemos determinar el remedio al que tiene derecho la peticionaria.[8] Conforme el análisis anterior, la decisión impugnada por la peticionaria no era revisable por el Comité de Apelaciones de la Corporación. Sin embargo, la Corporación notificó que el Comité de Apelaciones de la Corporación era el foro con jurisdicción para atender la revisión de la determinación de cesantía.

---

orden de *injunction* preliminar en la que determinó que la Corporación había incumplido con el principio de mérito y con su Reglamento al no notificar el plan de cesantías a los empleados. En lo pertinente, ese tribunal determinó que la decisión impugnada fue tomada por la Junta de Directores de la Corporación, por lo que es irrevisable ante el Comité de Apelaciones ya que "[l]o que se cuestión[ó] [fue] si el plan de cesantías adoptado por la Junta de Directores cumpl[ió] [o no] con los requisitos de ley y del reglamento". Orden de *injunction* preliminar emitida por el Tribunal de Primera Instancia el 28 de agosto de 2009 en el Caso Civil Núm. KPE-2009-3277, pág. 4.

La peticionaria sostiene que ese dictamen del Tribunal de Primera Instancia constituye un impedimento colateral por sentencia que veda la relitigación del asunto ante nos. No le asiste la razón. El análisis de ese foro inferior nos resulta persuasivo pero no constituye un impedimento colateral por sentencia. El impedimento colateral por sentencia es una modalidad de la doctrina de cosa juzgada, y como tal, requiere identidad de partes y una sentencia válida y final. *P.R. Wire Prod. v. C. Crespo Asoc.*, res. en 15 de diciembre de 2008, 175 D.P.R. ___ (2008), 2008 T.S.P.R. 189. 2008 J.T.S. 209; *Méndez v. Fundación*, 165 D.P.R. 253; *Fatach v. Triple S, Inc.*, 147 D.P.R. 882 (1999). La orden de *injunction* preliminar para el Caso Civil Núm. KPE-2009-3277 no constituye una sentencia final ni cumple con el requisito de identidad de partes.

[8] Una sentencia debe conceder el remedio al que tenga derecho una parte, aun cuando ésta no haya solicitado tal remedio en sus alegaciones. Regla 43.6 de Procedimiento Civil de 1979. Véase, la Regla 42.4 de Procedimiento Civil de 2009. Véase, además, R. Hernández Colón, *Práctica Jurídica de Puerto Rico*, *Derecho Procesal Civil*, 4ta ed., San Juan, LexisNexis, 2007, sec. 4103, págs. 325-326.

El Tribunal de Primera Instancia resolvió que ese defecto en la notificación invalidaba la cesantía sin que fuera necesario adjudicar los méritos de la reclamación. Para ese proceder, el foro primario se basó en *Com. Ciudadanos Caimito v. G.P. Real Prop.*, res. en 4 de junio de 2008, 173 D.P.R. ___ (2008), 2008 T.S.P.R. 105, 2008 J.T.S. 125. Incidió el Tribunal de Primera Instancia, al así proceder.

En *Com. Ciudadanos Caimito v. G.P. Real Prop.*, *supra*, resolvimos que se incumple con las exigencias del debido proceso de ley cuando no se notifica adecuadamente una determinación administrativa a una parte afectada por ella. En aquella ocasión, expresamos que

> en el caso *Carabarín et al. v. A.R.P.E.*, 132 D.P.R. 938, (1993), establecimos que aunque la agencia notifique a una parte su determinación, **si dicha notificación no advierte adecuadamente el foro al que se debe acudir en revisión, no se puede perjudicar a la parte por haber acudido al foro erróneo, ya que esto sería permitir que la agencia se beneficie de actuaciones administrativas que inducen a error a la parte notificada.** *Com. Ciudadanos Caimito v. G.P. Real Prop.*, *supra*, pág. 7. (Énfasis en el original).

Por lo tanto, concluimos entonces que si una parte no ha sido notificada adecuadamente de su derecho de revisión, a dicha parte no se le pueden oponer los términos para recurrir. No obstante, esa parte estará sujeta a la doctrina de incuria. La doctrina de incuria se ha definido como "dejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la

parte adversa, opera como un impedimento en una corte de equidad". *Íd.; Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610, 618 (1990).

En Puerto Rico hemos utilizado la doctrina de incuria en relación a remedios extraordinarios, como por ejemplo, el *injunction*, el *mandamus* y el *certiorari*. *Aponte v. Srio. de Hacienda*, *supra*. Específicamente, en *Carabarín v. A.R.P.E.*, *supra*, el foro con jurisdicción para revisar la determinación de la agencia era el foro primario. Sin embargo, la agencia informó que la revisión era ante un órgano administrativo. Allí, expresamos lo siguiente:

> Ante tales hechos, si bien la actuación de A.R.P.E. no pudo tener el efecto de concederle jurisdicción a un organismo que por ley no la tiene, sí tiene el efecto de detener los términos para solicitar la reconsideración ante la agencia y revisión ante el Tribunal Superior. *Íd.*, pág. 959.

En *Carabarín v. A.R.P.E.*, a diferencia del caso ante nuestra consideración, la parte perjudicada por la decisión administrativa había acudido ante el organismo administrativo según le fuera informado pero ese foro carecía de jurisdicción. Tras invocar preceptos de orden público y justicia, concedimos a la parte perjudicada la oportunidad de solicitar reconsideración y de acudir al tribunal para impugnar la decisión administrativa.

De lo anterior se desprende que el remedio que hemos reconocido en estos casos de notificaciones erróneas en torno a la revisión de una determinación administrativa, consiste en concederle tiempo a la parte perjudicada para

que ejerza su derecho de revisión judicial como corresponde o atender el recurso de revisión ya presentado, si no ha mediado incuria.[9] *Com. Ciudadanos Caimito v. G.P. Real Prop.*, *supra*; *Colón Torres v. A.A.A.*, 143 D.P.R. 119 (1997); *Pérez, Pellot v. J.A.S.A.P.*, 139 D.P.R. 588 (1995); *Carabarín v. A.R.P.E.*, *supra*; *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *García v. Adm. del Derecho al Trabajo*, 108 D.P.R. 53 (1978).

En este caso, la peticionaria fue notificada de su derecho a cuestionar la determinación de la Corporación y de solicitar una vista informal para cumplir con las exigencias del debido proceso de ley. Sin embargo, la Corporación equivocadamente informó que el foro con jurisdicción para solicitar la revisión era el Comité de Apelaciones de la Corporación. No obstante, la peticionaria acudió oportunamente al Tribunal de Primera Instancia, que era el foro con jurisdicción para adjudicar sus reclamos.[10] Ante esto, procedía que el foro judicial dilucidara en sus méritos la Demanda presentada. Es decir,

---

[9] El debido proceso de ley en su vertiente procesal ofrece el derecho a: (1) una notificación adecuada del proceso; (2) un proceso ante un juez imparcial o vista previa; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; (5) la posibilidad de comparecer con un abogado; (6) que la decisión se base en el récord; y (7) una decisión explicada o fundamentada. *Domínguez Castro et al. v. E.L.A. I*, res. en 2 de febrero de 2010, 178 D.P.R. ___ (2010), 2010 T.S.P.R. 11, 2010 J.T.S. 20. En el área del empleo público, el empleado tiene derecho a una vista informal previa a su despido. *Íd.*

[10] La decisión administrativa fue notificada el 28 de septiembre de 2009 y la peticionaria presentó su Demanda judicial el 22 de octubre de 2009.

en el caso de autos, ante la aludida notificación errónea, la parte peticionaria al ejercer su derecho de revisión ante el foro de instancia, utilizó correctamente el remedio disponible para estos casos.

En concordancia con lo anterior, debemos colegir que el defecto en la notificación no podía invalidar *ipso facto* las cesantías impugnadas ni hacer procedente el *injunction* solicitado.[11] El Tribunal de Primera Instancia debió entrar a considerar los méritos de la reclamación de la peticionaria y por lo tanto no podía conceder el remedio del *injunction* sin antes hacer una adjudicación del derecho sustantivo.[12]

IV

Por los fundamentos que preceden, se expide el auto de *certiorari* y se revoca la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal

---

[11] El Tribunal de Apelaciones señaló correctamente que "[c]omo el TPI no especifica cuál de los dos remedios solicitados concede, no hace las determinaciones procedentes en derecho cuando se emite un remedio preliminar y tampoco determina la consolidación de los remedios, debemos presumir que el TPI concedió el remedio permanente". Sentencia del Tribunal de Apelaciones, pág. 6, n. 3.

[12] Sabido es que el remedio extraordinario de *injunction* está disponible cuando una persona carece de un remedio adecuado en ley. D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Programa de Educación Jurídica Continua, Facultad de Derecho Universidad Interamericana, 1996, pág. 18. "El *injunction* no es nada más que un remedio provisional, o permanente, para hacer efectivo el derecho sustantivo que se esté ejercitando en la demanda". *Íd.*, pág. 45. "El derecho sustantivo de que se trate eventualmente se ventilará en un juicio plenario como en cualquier otra acción". *Íd.*, págs. 45-46. Los factores que se deben tomar en cuenta para conceder el *injunction* permanente son: (1) si el demandante ha prevalecido en un juicio en sus méritos; (2) si el demandante posee algún remedio adecuado en ley; (3) el interés público envuelto; y (4) el balance de equidades. *Aut. de Tierras v. Moreno Dev. Corp.*, res. en 24 de julio de 2008, 174 D.P.R. ___ (2008), 2008 T.S.P.R. 128, 2008 J.T.S. 148. Esa adjudicación del derecho sustantivo reclamado no ha ocurrido en el caso de autos.

de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Se dictará Sentencia de conformidad.


MILDRED G. PABÓN CHARNECO
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivonne Molini Gronau

Peticionaria

v.

Corporación de Puerto Rico para la Difusión Pública, et al.

Recurrida

CC-2009-1097

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

SENTENCIA

En San Juan, Puerto Rico, a 20 de julio de 2010.

Por los fundamentos que preceden, se expide el auto de *certiorari* y se revoca la Sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos de forma compatible con lo aquí resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton y la Juez Asociada señora Rodríguez Rodríguez concurren sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo